OPINION OF THE COURT
John M. Curran, J.
Plaintiff has moved for an order compelling defendant to appear for “an additional 4-hour session” of his deposition. Defendant opposes this request essentially on the grounds that plaintiff has waived any further deposition session by expressly consenting to the conclusion of the deposition.
At the initial oral argument on the motion, the court asked for a complete copy of the defendant’s deposition transcript. Following its review of that transcript, the court interposed certain questions to the parties concerning plaintiffs complaints in her motion papers that defense counsel improperly impeded her ability to conduct the deposition. Defendant objected to the court’s inquiry claiming that the only issue presented by the motion was whether plaintiff had concluded the deposition session or was otherwise entitled to another four-hour session. The court overruled this objection because plaintiffs motion papers contain numerous complaints that defense counsel “greatly” interfered with the deposition and “objected to virtually every question essentially preventing any meaningful deposition” (plaintiffs aff ¶¶ 1, 20, 23).
Another Four-Hour Session
At the court appearance conducted on April 11, 2013, plaintiff requested that she be afforded two or more four-hour sessions on non-consecutive days to depose the defendant. Plaintiff based this request on her health issues. The court inquired whether the defendant had any objection. Defense counsel indicated that they could not agree. The court advised plaintiff that depositions were typically conducted from 9:30 a.m. to 4:30 p.m. on a day-to-day basis. The court indicated to plaintiff that, if she wished to change this usual practice, she would have to seek an order.
*721 Plaintiff proceeded with the defendant’s deposition on April 25, 2013, without seeking any such order. At page 109 of the transcript provided to the court, plaintiff indicated that she did not have any further questions and tendered the witness to defense counsel. There is no indication in the transcript that plaintiff had any further questions for the defendant. Accordingly, plaintiff consented to the conclusion of the deposition and plaintiffs request to conduct an additional four-hour session of the defendant’s deposition must be denied.
Deposition Interference
The scope of disclosure is broadly defined by CPLR 3101 (a): “[t]here shall be full disclosure of all matter material and necessary in the prosecution or defense of an action, regardless of the burden of proof” (emphasis added).[1] This language is “to be interpreted liberally to require disclosure, upon request, of any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity. The test is one of usefulness and reason” (Allen v CrowellCollier Publ. Co., 21 NY2d 403, 406-407 [1968] [cited in Rawlins v St. Joseph’s Hosp. Health Ctr., 108 AD3d 1191, 1192 (4th Dept 2013)]). “[I]t is important to note that New York has long favored open and far-reaching pretrial discovery. To a large extent, New York’s open disclosure policy was intended to mark an end to the presentation of totally unexpected evidence and to substitute honesty and forthrightness for gamesmanship” (Di-Michel v South Buffalo Ry. Co., 80 NY2d 184, 193 [1992], rearg denied sub nom. Poole v Consolidated Rail Corp., 81 NY2d 835 [1993], cert denied 510 US 816 [1993]; see also Kavanagh v Ogden Allied Maintenance Corp., 92 NY2d 952, 954 [1998]; Giles v Yi, 105 AD3d 1313 [4th Dept 2013]). The Court of Appeals has held that “pretrial discovery is to be encouraged” (Hoenig v Westphal, 52 NY2d 605, 608 [1981]).
CPLR 3113 provides for the manner in which depositions are conducted while CPLR 3115 addresses objections to questions and answers at depositions. Neither section limits the broad scope of disclosure authorized by CPLR 3101 (a) (see Kavanagh, 92 NY2d at 953-954). The most pertinent parts of these statutes are that objections are to be noted by the stenographer, the deposition is to proceed, objections to the form are ordinarily waived *722 unless raised at the deposition, and objections to admissibility are typically not waived by failing to raise them at the deposition. “[T]he scope of [an] examination on deposition is broader than what may be admissible [at] trial” (White v Martins, 100 AD2d 805, 805 [1st Dept 1984]; see Johnson v New York City Health & Hosps. Corp., 49 AD2d 234, 237 [2d Dept 1975]).
Instructions not to answer questions at depositions are not addressed by the CPLR. Such instructions are conceptually contrary to CPLR 3113 (c) which directs that depositions “shall proceed as permitted in the trial of actions in open court.” The courts have nevertheless recognized that there may be rare occasions when a party witness may be instructed by his or her counsel not to answer a deposition question, subject to a motion to compel and/or for a protective order. The Appellate Division has long held:
“We do again, however, call to the attention of the Bench and Bar that in an examination before trial unless a question is clearly violative of the witnesses’s constitutional rights, or of some privilege recognized in law, or is palpably irrelevant, questions should be freely permitted and answered, since all objections other than as to form are preserved for the trial and may be raised at that time.” (Freedco Prods. v New York Tel. Co., 47 AD2d 654, 655 [2d Dept 1975]; see also Watson v State of New York, 53 AD2d 798 [3d Dept 1976]; White, 100 AD2d at 805; Humiston v Grose, 144 AD2d 907 [4th Dept 1988]; Dibble v Consolidated Rail Corp., 181 AD2d 1040 [4th Dept 1992]; Roggow v Walker, 303 AD2d 1003 [4th Dept 2003].)
In 2006, part 221 of the Uniform Rules for Trial Courts (22 NYCRR), entitled Uniform Rules for the Conduct of Depositions, was adopted. Section 221.2 requires deponents to “answer all questions at a deposition, except: “(a) to preserve a privilege or right of confidentiality;[2] “(b) to enforce a limitation set forth in an order of a court; or “(c) when the question is plainly improper and would, if answered, cause significant prejudice to any person” (emphasis added). As this court has previously observed, “[t]hese . . . rules also were nothing new but rather a *723 useful regulatory guide to effectuate application of CPLR 3113 (c), and to otherwise reconfirm controlling case law” (Sciara v Surgical Assoc. of W. N.Y., P.C., 32 Misc 3d 904, 908 [Sup Ct, Erie County 2011], affd, in part and mod in part 104 AD3d 1256 [4th Dept 2013], lv granted 107 AD3d 1503 [4th Dept 2013]).[3]
Because the trial courts have broad discretion in supervising disclosure and such discretion is only disturbed upon a showing of an abuse of that discretion (Hann v Black, 96 AD3d 1503, 1504 [4th Dept 2012]), there are no precise parameters for what constitutes “plainly improper” or “palpably improper” questioning causing “significant prejudice.” The courts have established certain boundaries such as: (1) questions seeking “a conclusion of fact or law and an argumentative matter” are not permitted at an examination before trial (Lakeville Merrick Corp. v Town Bd. of Town of Islip, 23 AD2d 584, 585 [2d Dept 1965]; Milbeck Apts., Inc. v Corby Assoc., Inc., 285 App Div 83, 85 [1st Dept 1954]; Rausch v Monfort, 251 App Div 868 [2d Dept 1937]); (2) questions “largely related” to a party’s understanding of his or her “ultimate legal contentions” are “palpably improper” (Barber v BPS Venture, Inc., 31 AD3d 897, 897 [3d Dept 2006]; Lobdell v South Buffalo Ry. Co., 159 AD2d 958 [4th Dept 1990]); and (3) a party witness may not be compelled to answer questions seeking legal or factual conclusions or questions asking the witness to “draw inferences from the facts” (Mayer v Hoang, 83 AD3d 1516, 1518 [4th Dept 2011]; Lobdell, 159 AD2d at 958).
Plaintiff commenced a line of questioning which she described as pertaining to “specific medical practices” (tr at 16). She then attempted to ask defendant whether he was “familiar with” certain well-recognized medical journals (tr at 16). Defense counsel immediately declared: “I can’t let him answer it in that form” (tr at 17). Defense counsel then suggested to plaintiff that she rephrase the question in “an appropriate way to ask a question with regard to a physician and periodicals” (tr at 17).
Plaintiff attempted to comply with defense counsel’s suggestion by targeting her next question to a specific subject matter: “Can you name any studies appearing in peer-review journals, such as these, that show . . . .” (Tr at 17.) Defense counsel interposed an objection and directed her client not to answer *724 that question (tr at 17-18). Defense counsel again tried to suggest to plaintiff that it would be more appropriate if the question was whether the defendant accepted or adopted a particular periodical as authoritative (tr at 18). Defense counsel further indicated that she was instructing her client not to answer because the question was “palpably improper” (tr at 18).
A short while later in the deposition, plaintiff asked whether defendant was “aware of’ certain studies on a specific subject matter from specific journals (tr at 26). Defense counsel again refused to allow her client to answer unless the question was related to whether the defendant found the specific journals to be authoritative (tr at 26).
The instruction not to answer on the basis described in the transcript was improper. Plaintiff is not required during a discovery deposition to establish that the defendant physician recognized the articles as authoritative. While that foundation is required to cross-examine a defendant physician or an expert at trial before referencing the hearsay in the article, no such foundation for admissibility is required at a deposition. It is well-settled that the standard governing the appropriate scope of questioning at a deposition is not based on admissibility at trial, but on whether the questioning relates to the controversy and will assist in trial preparation (Dattmore v Eagan Real Estate, 112 AD2d 800 [4th Dept 1985]; Shutt v Pooley, 43 AD2d 59 [3d Dept 1973]). Whether a defendant physician is aware of certain journals in his field of expertise is pertinent to establishing at trial whether the physician considers such journals to be authoritative. Here, plaintiff was precluded from determining whether the defendant was even aware of such journals. Plaintiff was thereby stymied from asking follow-up questions regarding specific articles on pertinent subject matters.
Because defense counsel’s instructions not to answer improperly interfered with plaintiff pursuing this line of questioning, the defendant physician must appear at a further deposition to answer questions regarding the journals referenced in the transcript. Plaintiff also will be entitled to ask follow-up questions regarding any specific articles from those journals which are pertinent to the controversy. Copies of the articles to which the plaintiff wishes to call the defendant physician’s attention must be provided at the time of the questioning.
Plaintiff also attempted to inquire whether the defendant physician was familiar with her subsequent treatment. Defense counsel categorically refused to allow any such inquiry and *725 instructed her client not to answer (tr at 98-105). This too was improper.
Plaintiff was precluded from determining even whether the defendant physician was aware that she went for further treatment and whether the defendant physician knew what the results of that treatment were in connection with her complaints in this action. At a minimum, because the defendant physician may be asked to provide expert opinions at trial, the defendant physician may be asked facts that will be part of the record at trial even though they were not part of his specific treatment of the plaintiff.
As an expert, the defendant physician can be asked to assume certain facts provided they are otherwise in the record. While it may be inappropriate to ask the defendant physician to express an opinion as to the quality of care rendered solely by another physician (Dare v Byram, 284 AD2d 990 [4th Dept 2001]), it is not improper to ask about the defendant’s awareness of such treatment and whether the defendant physician is aware of the plaintiffs current condition which allegedly may be a result of the defendant’s negligence (see e.g. Forgays v Merola, 222 AD2d 1088 [4th Dept 1995]; Glass v Rochester Gen. Hosp., 74 AD2d 732 [4th Dept 1980]; Wilson v McCarthy, 57 AD2d 617, 617 [2d Dept 1977] [“questions such as those to be posed by plaintiffs’ counsel in an examination before trial may roam far and wide, and may be posed for the purpose of eliciting information calculated to lead to relevant evidence”]). To limit a discovery deposition solely to the period of treatment by the defendant physician would deprive the plaintiff of the ability to prepare for trial to meet the testimony of the defendant physician who may at that time express opinions or otherwise testify about the plaintiffs ultimate complaints and current condition.
For these reasons, the defendant also must be re-deposed concerning the report(s) plaintiff attempted to identify and direct his attention to during the first session. While the defendant cannot be compelled to express an expert opinion as to the quality of the later treatment, the facts mentioned in those reports concerning the plaintiffs condition are an appropriate subject matter.
Defendant also refused to answer questions about an affidavit he allegedly executed on behalf of plaintiff in a prior action (tr at 71-79). Defendant apparently takes the position that the affidavit was drafted by someone other than himself, that the version he was shown at the deposition was not the final one, and *726 that he may have made changes to the one he was shown. While all of this was explained on the record by defense counsel, plaintiff was deprived of any opportunity to explore the explanation and the statements in the affidavit. It also appears that the affidavit may contain a significant statement by defendant that plaintiff suffered an adverse reaction to the treatments he administered, a fact which appears to be in dispute in this action. This should be explored at the deposition.
The instruction not to answer questions regarding the affidavit were improper. Plaintiff should be afforded the opportunity to depose defendant on the contents of the affidavit, including any of the defendant’s claims of changes to the document.

Lawson

Defendant asserts that he cannot be compelled to answer questions about the care plaintiff received from subsequent treating physicians because it would be beyond his own knowledge and would not pertain to facts known by him. Defendant relies upon Lawson v Michalakes (Sup Ct, Erie County, Jan. 17, 1996, Mintz, J., index No. 1400/94, affd, 236 AD2d 900 [4th Dept 1997]), to assert that “he may not be compelled to testify regarding solely the conduct of other physicians” (Sweet aff ¶ 11). With respect to the affidavit, defendant cites Lawson for the proposition that the instructions not to answer were proper to correct “plaintiff’s misleading questions” and to avoid unexplained “significant prejudice” (Sweet aff ¶ 12).
The court disagrees with the defendant’s assertions for a number of reasons. First, the instructions not to answer interposed by defense counsel prohibited any questioning about plaintiffs subsequent treatment for the condition she alleges defendant caused. The categorical preclusion at such an early stage of the questioning about subsequent treatment and defendant’s awareness of plaintiffs condition after his treatment concluded was improper because it precluded plaintiff from more fully exploring defendant’s knowledge of relevant facts and his credibility with respect to the depth of his knowledge as to the causes of plaintiffs condition.
Second, defendant’s reliance on Lawson is misplaced because defendant overstates the trial court’s decision in that case. Justice Mintz’s decision in Lawson related to the use of complex hypothetical questions based on facts unknown to the defendant physician. It does not authorize instructions not to answer allegedly “misleading questions.” It also does not preclude dep *727 osition testimony touching upon plaintiffs condition after the defendant’s negligence occurred or as to the treatment she received for the conditions allegedly caused by that purported negligence, all of which will be facts introduced at trial even if defendant is not personally familiar with them.[4]
Third, plaintiffs questioning, as limited as it was due to the premature instructions not to answer, does not appear to relate to the conduct of other physicians. Rather, the questions appear to relate to plaintiff’s condition and to the treatment necessitated by it, subjects which are clearly relevant to the claims in this case.
Fourth, while Lawson was affirmed by the Fourth Department, there was no decision indicating whether the Appellate Division agreed with Justice Mintz’s analysis. Such a summary affirmance should not be taken as approval of the trial court’s expressions but merely as an indication by the Appellate Division that it declined to reverse the order made in the trial court’s discretion (Griffin v Brady, 133 App Div 939 [1st Dept 1909]; Dall v Time, Inc., 252 App Div 636, 641 [1st Dept 1937], affd 278 NY 635 [1938]; Baksi v Wallman, 271 App Div 422, 426 [1st Dept 1946]; see also Scott & Co., Inc. v Scott, 186 App Div 518 [1st Dept 1919]). Lawson also has not been cited by any court since it was decided 16 years ago. Moreover, there are significant questions about whether Justice Mintz’s analysis was proper or is currently applicable.[5] Accordingly, Lawson should not be applied as controlling authority for any principle of law.
*728 Fifth, Justice Mintz’s decision in Lawson, which appears to prohibit the positing of hypothetical questions to defendants physicians based on facts with which they are not personally familiar, is at odds with case law requiring a movant for summary judgment to assume the opposing party’s version of the facts to be true and to otherwise view the evidence in the light most favorable to the opposing party (Haskins v Loeb Rhoades & Co., 76 AD2d 751 [1st Dept 1980, Murphy, J., dissenting]), affd 52 NY2d 523 [1981]; Perez v New York City Hous. Auth., 212 AD2d 379 [1st Dept 1995]; Mosheyev v Pilevsky, 283 AD2d 469 [2d Dept 2001]).[6] Because a defendant physician, in moving for summary judgment in a medical malpractice action, must assume the plaintiffs version of the facts as true and to view the evidence most favorably to the plaintiff, motions for summary judgment by defendant physicians are frequently premised upon facts to which the defendant physician may not agree or upon facts with which the defendant physician is not personally familiar. In order to properly oppose a motion for summary judgment, a plaintiff must be allowed to pose questions to the defendant physician which assume as true record facts to which the defendant physician does not agree or record facts with which the defendant physician may not be personally familiar. To allow a defendant physician to make a motion for summary judgment or testify at trial on the basis of facts of which the defendant physician may not be personally aware or may even disagree with, but deprive the plaintiff of the opportunity to explore those views at deposition, would be unfairly one-sided in favor of the defendant physician.
Finally, Lawson was largely decided on Justice Mintz’s two valid practical concerns: (1) requiring defendant physicians to answer complex hypothetical questions assuming facts which might not be received into evidence at trial “unduly hampers the defendant’s attorney”; and (2) awaiting until trial to have the court rule upon the admissibility of the deposition testimony “creates a cumbersome process,” including a “burden on the *729 trial judge.” Nevertheless, the CPLR, Appellate Division authority and the Uniform Rules require that all deposition questions be answered with objections noted by the stenographer, unless the questioning transgresses the three narrowly-crafted bases for instructing a party witness not to answer. While it might be less cumbersome and more efficient to have a judge present at every deposition, that is not the process provided for by the legislature and is contrary to New York’s “long favored” policy of “open and far-reaching pretrial discovery” (DiMichel, 80 NY2d at 193). Thus, even when a question is perceived as “misleading,” it must be answered subject to objection unless it crosses the threshold for interposing a proper instruction not to answer.
For all of these reasons, the defendant’s arguments, including those based on Lawson, are rejected.
Based on the foregoing, the defendant physician must be produced for a further deposition in accordance with the terms of this decision. The defendant’s further deposition must occur within 90 days of the date of the order entered upon this decision, with notice of entry. The nonparty depositions which the defense wishes to conduct need not await the defendant’s further deposition.

. CPLR 3101 (a) was amended by Laws of 1993, chapter 98 (eff Jan. 1, 1994) to more broadly encompass all “matter” in place of the previous word “evidence.”

. This motion does not involve defendant’s assertion of any privilege as none was asserted in relevant part at the deposition. Additionally, defendant did not move for a protective order asserting a privilege upon which defendant would have the burden of establishing the existence and scope of a privilege (Koump v Smith, 25 NY2d 287 [1969]).

. One recent trial court decision addresses whether there is a distinction between the Uniform Rules requirement of “significant prejudice” and preexisting case law which does not appear to impose that requirement (White v White, 42 Misc 3d 260 [Sup Ct, Monroe County, Oct. 17, 2013]).

. Based on this court’s review of the record in Lawson, it appears that there was some confusion about the “record” upon which hypothetical questions may be based. Any such reference should not be confused with the medical record generated by the defendant physician being deposed. Instead, references to the “record” should be understood to include facts likely to be introduced at trial by plaintiff and which may or may not be in the medical record of the defendant physician being deposed. While all of those facts may not be known at the time of the defendant physician’s deposition, such facts would include at least those contained in the pleadings (including the bill of particulars) and as attested by the plaintiff at his or her deposition (which almost always is concluded before any defendant physician is deposed).

. At least some portions of Justice Mintz’s analysis appear to be contrary to his predecessor in the Erie County medical malpractice part. The late Justice Henry Gossell decided that a defendant physician could be presented with questions at deposition which assume facts to which the defendant physician does not agree (Smith v Silvers, Sup Ct, Erie County, Gossell, J., index No. 1105/1989 [a copy of the decision is attached as appendix A (the appendix has not been reproduced for purposes of publication)]). Furthermore, Justice Patrick H. NeMoyer has called the Lawson analysis into question by casting doubt about whether the analysis would still hold true after the adoption of *728 the Uniform Rules pertaining to conduct at depositions (Grisanti v Kurss, 28 Misc 3d 1233[A], 2010 NY Slip Op 51579[U] [Sup Ct, Erie County 2010]; Buhar v Brodman, 30 Misc 3d 324 [Sup Ct, Erie County 2010]).

. This point was not raised in Lawson. Moreover, the assumption in Lawson appears to have been that the facts were not in dispute (“and there isn’t any argument that those are facts” [Referee tr at 9]). In this court’s experience the facts as attested by plaintiff and the facts as recalled by the defendant physician or as set forth in the medical record are frequently in dispute. For this reason too, Lawson should not be generally applied.