The counsel for the defendant insists that the courts of this State have no jurisdiction of the cause of action relied upon by the plaintiff. That is, causing the death of the intestate by negligence, while a passenger on its boat, navigating the waters of Lake Champlain between Plattsburgh and Whitehall, receiving and landing passengers and freight at various intermediate ports in this and the State of Vermont, while within this State.
The ground upon which the want of jurisdiction is claimed is, that the injury is a maritime tort, and therefore the case comes within the admiralty jurisdiction, which under the Constitution and laws of the United States is exclusively vested in the courts of that government. The State courts can exercise no admiralty jurisdiction. (The Josephine, 39 N.Y., 19; Brookman v.Hamill, 43 id., 554.) But conceding that redress for the injury complained of might have been obtained by proceedings in admiralty, it does not follow that the State courts have no jurisdiction. Section 9 of the judiciary act, *Page 5 
passed by Congress in 1789, while vesting exclusive original jurisdiction of all civil causes of admiralty and maritime jurisdiction in the District Courts of the United States, expressly saves to suitors, in all cases, the right of a common-law remedy, when the common law is competent to give it. Section 1, chapter 29 of the Act of Congress, 1845, by which the admiralty and maritime jurisdiction of the District Courts is extended to certain lakes and rivers, the jurisdiction of the State courts is preserved by still more comprehensive language, as follows: "Saving, also, to the parties, the right of a concurrent remedy at the common law, when it is competent to give it, and any concurrent remedy which may be given by the State laws when such steamer or other vessel is employed in such business of commerce and navigation." The argument against the jurisdiction of the State courts is, that inasmuch as the common law gave no right of action to the personal representatives for the recovery of damages for the pecuniary injury of the next of kin, caused by the death against those whose wrongful act caused it, there was no civil common-law remedy for such an injury. This is true. Until a right exists there can be no remedy. But when a right is given, whether by the common law or statute, there must be some remedy when it is withheld. The right of the next of kin to compensation for the pecuniary injury, is given by statute, and to enforce it a common-law action is given to the personal representatives. It is this common-law remedy that is saved in the acts above referred to. This is saved wholly irrespective of the foundation of the right to be enforced, whether upon the common law or statute. The intention of the statute was to confer exclusive admiralty and maritime jurisdiction upon the District Courts, at the same time leaving to the suitor his option of seeking redress at common law when it could be so obtained. This appears from the saving of common-law remedies instead of common-law rights. The former are preserved to the suitor in all cases, when competent, irrespective of the foundation of the latter, whether upon the common law or statutes. *Page 6 
It is further insisted that jurisdiction is taken away from the State courts by chapter 43, Act of Congress, 1851, limiting the liability of ship-owners and for other purposes. Section 3 of that chapter limits the liability of such owners to the value of the ship and freight then pending. It is obvious that this limited liability can be equally well enforced in a common-law action, when, as in the present case, the injury is confined to one party, as though no such limit had been imposed. Section 4 of the act provides the mode to be adopted by the owner in case the injury is to several, and the value of the ship and freight then pending is insufficient to compensate all in full, to stay actions at common law in the State courts. The practice to be pursued for this purpose is discussed and determined in NorwichCo. v. Wright (13 Wallace, 104). No such practice was or could have been adopted by the defendant in the present case, as the injury was sustained by a single party. It follows that the court had jurisdiction to try and give judgment in the case.
Another ground of the motion for a nonsuit was that there was no proof of negligence of the defendant contributing to the death of the deceased. Upon this there was no conflict in the testimony. The proof showed that the boat upon which the deceased took passage had a gangway in the forward part about eight feet in width, with a stanchion in the center, which was covered with rails, about three feet high, which were attached by hinges to the bulwarks of the same height, inclosing the residue of the forward part of the boat; that these rails were swung back, when necessary, for the purpose of receiving and landing passengers and freight, and were when this was done, again placed over the gangway and fastened to the stanchions; that they were so fastened when the deceased fell overboard. That the residue of the forward part of the boat was boarded up three feet high. That the accommodations for passengers were in other parts of the boat, and none in this forward part, though passengers were permitted to and did, sometimes, come out into and stay in this forward part, with the knowledge of the defendant's *Page 7 
employes. That the deceased, about dusk, while the boat was running upon her trip, and the deck somewhat icy, and the wind blowing hard, come through a door from the room immediately in rear of this forward part; that his hat was blown off, and he sprang to recover it, and while so doing fell down and slipped under the railing upon the gangway, overboard, and was drowned. It will be seen that the only proof of negligence was the omission to inclose the space between the railing and deck so as to preclude the possibility of slipping under it. Had there been any proof tending to show that any such danger would be apprehended by a reasonable, prudent person, the evidence should have been submitted to the jury; but the evidence showed that all the passenger boats upon the lake had been constructed and run in the same way in this respect; that boats had so been run for a great number of years; and there was no proof tending to show that any one had ever before fell and gone overboard under the railing, or that any such danger had been apprehended by any one. It is obvious that no such thing was likely to occur. Indeed, a man would be much more likely to get overboard by falling over than under the railing. True, it would be unsafe for small children to run upon this part of the boat, as they might run under the rail and fall overboard; but there was no evidence that children were ever permitted to be in this part of the boat, except to go on and off in port; there was nothing showing that any passengers were ever expected to be there except for this purpose. The counsel for the appellant cites cases where it has been held that carriers of passengers are required to exercise the utmost care in their vehicles, machinery, etc., used in their transportation, and that for this purpose they are required to use all the safeguards furnished by science generally known; but these were cases of the explosion of steam-boilers; the breaking of axles of railway coaches, defects in railway tracks and the like, where experience had shown that danger was to be apprehended and necessary to be guarded against. But when, as in the present case, numerous boats, *Page 8 
constructed in the same way had been run for years with perfect safety to the passengers, where there was no ground for supposing that any passenger ever permitted to be there would fall under the railing, to find negligence from a failure to board up the space so as to preclude such a possibility, could not be justified. Proof was given that two passenger-boats navigating the Hudson had the gang space boarded up; but that this was done to prevent passengers from falling overboard does not appear.
The proof offered that the defendant after the accident boarded up the space, was properly excluded. This was immaterial. Its negligence was to be determined by what was known before and at the time of the accident.
The nonsuit was properly granted, and the judgment entered thereon must be affirmed.
All concur.
Judgment affirmed.