## WALTER *vs.* KIERSTEAD.

1. Service of a bill of exceptions by the plaintiff in error or his attorney, or by any other person, if properly shown by affidavit, is valid.

2. While state courts can exercise no jurisdiction in cases peculiarly cognizable in admiralty, yet the statute of the United States which confers upon the district courts authority to hear and determine "all civil causes of admiralty and maritime jurisdiction, saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it, and of all seizures on land and on waters not within the admiralty and maritime jurisdiction; and such jurisdiction is declared to be exclusive, except in the particular cases where jurisdiction of such causes and seizures is given to the circuit court," does not preclude a suitor from proceeding by attachment in a state court for an injury done to a dredge, although the remedy by attachment did not exist at common law, but has been conferred by statute. The intention of the statute was to confer exclusive admiralty and maritime jurisdiction upon the district courts, at the same time leaving to the

suitor his option of seeking redress at common law, when it could be so obtained.

3. Where, in an affidavit to obtain an attachment against a vessel for damages to a dredge resulting from a tort, it was alleged that the defendant named was the master and part owner of the vessel, and the declaration alleged that the other owners were unknown, this was sufficient to sustain the attachment.

4. Part owners of a ship are tenants in common, not joint tenants or co-partners; and, therefore, the defendant named in the affidavit had an interest in the property on which an attachment might be levied.

5. The remaining ground of demurrer presents no specific defect in the proceedings in which it is made, and is altogether too vague and general to require the judgment of this court on it.

(*a.*) The defendant having replevied the barque attached, by executing a bond with security, conditioned to pay the amount of the judgment recovered by the plaintiff, and this having been duly returned into court with the attachment, the property attached was released from the lien of the attachment, the attachment itself was dissolved, and thereafter the action progressed as an ordinary suit at common law.

(*b.*) The declaration contained every necessary allegation to keep it in court. The attachment, so far as the purpose of that suit was concerned, was at an end, and the judgment dismissing it was unnecessary; but the judgment dismissing the declaration founded on it was error.

(*c.*) Although the attachment may have been irregular or erroneous, it was not void. Had it been so, the defendant might have moved to dismiss it, notwithstanding the property levied on had been replevied.

January 6, 1885.

Practice in Supreme Court. Courts. Jurisdiction. Admiralty. United States Courts. Attachment. Pleadings. Maritime Law. Tenants in Common. Partnership. Garnishment. Practice in Superior Court. Before Judge MERSHON. Glynn Superior Court. May Term, 1884.

To the report contained in the decision, it is only necessary to add, in explanation of the first division thereof, the following:

The only evidence of service of the bill of exceptions is an affidavit attached thereto of one C. I. Stacy, in which

he stated that he had served a copy of the bill of exceptions on the attorneys of defendant in error by serving one of them personally on the day named. Stacy's name does not appear as of counsel, nor is there anything further to indicate who he is or whether he has any connection with the case. A motion was made to dismiss the writ of error, on the ground that this service was not sufficient. It was overruled.

GOODYEAR & KAY, by brief, for plaintiff in error.

HARRIS & SMITH, by H. E. W. PALMER, for defendant.

HALL, Justice.

1. The motion to dismiss the writ of error must be denied. While the statute (Code, §4259) states in terms that, within ten days after the bill of exceptions has been signed and certified, the plaintiff therein shall serve a copy of the same upon the opposite party, etc., it has never been so rigidly construed as to hold that the service must be made by the plaintiff in error himself, and that service by any other person would be insufficient. On the contrary, it has been frequently held that service made by an attorney in the case and properly verified, or made by a sheriff or other officer of court, was a compliance with the statute. We see no reason why the service may not be effected by any other person than the plaintiff, his attorney or the sheriff, and proved in the same manner as it would have to be proved if made either by the plaintiff or his attorney. The fact of the service, by whomsoever made, with due proof thereof, fulfills the requirements of the law, and is all that is essential to its validity.

2. This was an attachment, at the instance of the plaintiff, against the defendant. The affidavit on which it is founded sets forth that the defendant in error was the master and part owner of the British barque, Emma G. Scammel; that the owners of the barque were indebted

to the plaintiff in the sum of $891.00, and that the defendant, the master of the barque, and her owners reside out of this state. The declaration on this attachment described the cause of action it was brought to enforce, and the defendant therein, and those associated with him in the ownership of the vessel on which the attachment was levied, as follows: That the plaintiff, "James E. Walter, was the owner of a dredge lying in the waters of the harbor of Brunswick, in Glynn county, known as the dredge 'Hercules,' and that W. F. Kierstead, as master and part owner of the British barque, Emma G. Scammel, and the other owners of said barque, who are unknown to petitioner, are indebted to petitioner in the sum of $891.00, which they refuse to pay; and that said indebtedness is by reason of damage to said dredge by the barque, Emma G. Scammel, running into said dredge while said dredge was at anchor, through the negligence and want of skill of the master of said barque."

To this declaration and attachment the defendant filed this demurrer:

(1.) That said declaration shows upon its face that the superior court of said county has not jurisdiction of the so-called cause of action therein set forth, and that the jurisdiction, if any, is vested in the United States Court, and not in the state court.

(2.) That the declaration shows an attempt to proceed against parties whose names are not alleged as unknown to deponent, either in the affidavit for attachment or the declaration.

(It will be observed that in fact the declaration does allege that the other owners are unknown.)

(3.) That said declaration in attachment seeks to reach a copartnership interest by levy and sale; whereas the same must have been served by process of garnishment.

(4.) That the affidavit and attachment proceedings are totally defective in law.

The court sustained this demurrer and ordered the plain-

tiff's action dismissed; and thereupon he excepted, and alleges error in this judgment upon each and all the grounds on which it is put.

First, the ground upon which the want of jurisdiction is claimed is, that the injury for which the suit is brought is a maritime tort, and therefore the case comes within the admiralty jurisdiction, which, under the constitution and laws of the United States, is exclusively vested in the courts of that government. That state courts can exercise no jurisdiction in causes peculiarly cognizable in admiralty is so well settled that it would be a waste of time to cite authorities to the question. But there are others in which the common law courts, both of the states and of the United States, exercise a concurrent jurisdiction with the courts of admiralty. Sub-section 8 of §563, Rev. Stat. of the U. S., which is a codification of all previous congressional legislation upon the subject, confers upon the district courts of the United States authority to hear and determine " all civil causes of admiralty and maritime jurisdiction, saving to suitors in all cases the right of a common law remedy, where the common law is competent to give it; and of all seizures on land and on waters not within the admiralty and maritime jurisdiction. And such jurisdiction is declared to be exclusive, except in the particular cases where jurisdiction of such causes and seizures is given to the circuit courts." This is decisive of the question here made, unless this case can be taken out of the provision in the first exception mentioned, " saving to suitors the right of a common law remedy." It is contended that the remedy afforded by attachment is not a common law, but a statutory remedy. We do not think that the legislation under consideration contemplated the distinction here insisted on. On the contrary, it merely meant to give concurrent jurisdiction to the common law courts, in cases where they had power to enforce such rights as the admiralty courts could enforce, whether the right or remedy was conferred by the common law or by statute. This question was passed

upon in all its aspects, and upon a full and thorough examination of the authorities by the court of appeals of the state of New York in 1873, in the case of Dougan *vs.* The Champlain Transportation Company, 56 N. Y., 1, 5, 6, it was there said, "But conceding that the redress for the injury complained of might have been obtained by proceedings in admiralty, it does not follow that the state courts have no jurisdiction. Section 9 of the judiciary act, passed by congress in 1789, while vesting original, exclusive jurisdiction of all civil causes of admiralty and maritime jurisdiction in the district courts of the United States, expressly saves to suitors, in all cases, the right of a common law remedy, when the common law is competent to give it. Section 1, ch. 29, of the act of congress of 1845, by which the admiralty and maritime jurisdiction of the district courts is extended to certain lakes and rivers, preserves the jurisdiction of the state courts by still more comprehensive language, as follows: "Saving also to the parties the right of concurrent remedy at the common law, when it is competent to give it, and any concurrent remedy which may be given by the state laws, when such steamer or other vessel is employed in such business of commerce and navigation." The argument against the jurisdiction of the state courts is that, inasmuch as the common law gave no right of action to the personal representatives for the recovery of pecuniary damages for the injury of the next of kin caused by the death, against those whose wrongful act occasioned it, there was no common law remedy for such an injury. This is true. Until a right exists, there can be no remedy. But when a right is given, whether by the common law or statute, there must be some remedy when it is withheld. The right of the next of kin to pecuniary compensation for the injury is given by the statute, and to enforce it a common law action is given to the personal representatives. It is this common law remedy that is saved in the acts above referred to. This is saved wholly, irrespective of the foundation of the right to

be enforced, whether upon the common law or the statute. The intention of the statute was to confer exclusive admiralty and maritime jurisdiction upon the district courts, at the same time leaving to the suitor his option of seeking redress at common law, when it could be so obtained. This appears from the saving of common law remedies instead of common law rights. The former are preserved to the sailor in all cases where competent, irrespective of the foundation of the latter, whether upon common law or statutes."

If the jurisdiction is to be taken away from the common law courts by every modification or change of common proceedings, or even by the substitution of modes of procedure other than those which obtained when the acts in question were passed, as seems to be supposed, we apprehend that the most absurd and incongruous consequences would follow, and that this reservation of the right would have been entirely barren of results, as it is manifest that there is in this respect no uniformity in the remedies administered by the courts of the several states of the Union, and that in none of them do these remedies coincide in substance, much less in detail, with such as were once administered by the requirements of the common law in the courts of the country from which our jurisprudence is derived. Desty's Federal Procedure, page 22 and citation in note; 4 Wallace, **571**; 7 *Id.*, 645; Broadwell *vs.* Swigert, 7 B. Monroe, 39, (S. C. 45 Am. Dec., 47.)

3. The second ground of demurrer is not well founded; the declaration does allege that the defendant's co-owners of the vessel attached, and which inflicted the wrong complained of upon the plaintiff's property, are unknown. The affidavit for the attachment never sets forth the nature or particulars of the demand, but must set forth the debtor, and this seems, considering the character of the claim—damages for a tort—to have been done; for the allegation that defendant is master and part owner of the vessel, which the demurrer admits to be true, is enough to

render both him and the offending craft liable to the plaintiff for the damage done his dredge boat.    Desty's Shipping and Admiralty, §§389, 390 and citations; Benedict's Admiralty, §§163, 290; 11 Peters R., **175,** last head-note; Broadwell *vs.* Swigert *ut sup.*   It would have been better to have set forth the fact that the other owners were unknown in the affidavit; but the objection goes not to that deficiency, but to the defect as it appears both upon the affidavit and the declaration filed on attachment.

4. Part owners of a ship are tenants in common, not joint tenants or copartners.    Benedict's Admiralty, §163; 11 Peters, 175; Knox *vs.* Campbell, 44 Am. Dec., 139. This being the case, the defendant named in the affidavit had an interest in the property on which an attachment might be levied.    There was no necessity, as in case of partnership, to execute the attachment by service of summons of garnishment, in order to reach his interest.

5. The remaining ground of demurrer points out no specific defect in the proceedings to which it is made; it is altogether too vague and general to require the judgment of the court on it.

The day after the barque was attached, the defendant replevied it by executing a bond, with security, conditioned, as required by law, to pay the amount of the judgment recovered by the plaintiff; this was duly returned to court with the attachment.    The property thus attached was released from the lien of the attachment; the attachment itself was dissolved, and thereafter the action progressed as an ordinary suit at common law.    Code, §3319 and citations.    The declaration filed contained every necessary allegation to keep it in court; the attachment, so far as the purposes of that suit were concerned, was at an end, and the judgment dismissing it was unnecessary; but when the court went further and dismissed the declaration founded on it, this, as we have seen, was error.    The attachment, in its inception, though it might have been irregular or erroneous, was not void; had it been void, the party might

have moved to dismiss, notwithstanding the property levied on had been replevied.    54 *Ga.*, 680; 60 *Id.*, 113.

Judgment reversed.