Pisula v Roman Catholic Archdiocese of N.Y. (2021 NY Slip Op 06872)





Pisula v Roman Catholic Archdiocese of N.Y.


2021 NY Slip Op 06872


Decided on December 8, 2021


Appellate Division, Second Department


Dillon, J.P., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 8, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
LINDA CHRISTOPHER
PAUL WOOTEN
JOSEPH A. ZAYAS, JJ.


2020-07018

[*1]David Pisula, respondent, 
v
Roman Catholic Archdiocese of New York, et al., appellants, et al., defendant. (Westchester County Index No. 69031/19) APPEAL by the defendant Roman Catholic Archdiocese of New York, and separate appeal by the defendant Church of Immaculate Heart of Mary, in an action, inter alia, to recover damages for negligence, from an order of the Supreme Court, Nassau County (Part CVA-R) (Steven M. Jaeger, J.), dated August 20, 2020. The order denied the motion of the defendant Roman Catholic Archdiocese of New York, joined by the defendant Church of Immaculate Heart of Mary, pursuant to CPLR 3024(b) to strike paragraphs 23 through 28 of the amended complaint on the ground that the allegations contained therein were irrelevant, scandalous, and prejudicial.



Motion by the plaintiff, inter alia, to dismiss the appeals on the ground that no appeal lies as of right from an order that refuses to strike scandalous or prejudicial matter from a pleading (see CPLR 5701[b][3]), and leave to appeal has not been granted. Cross motion by the defendant Roman Catholic Archdiocese of New York, and separate cross motion by the defendant Church of Immaculate Heart of Mary, for leave to appeal from the order dated August 20, 2020. By decision and order on motion of this Court dated June 3, 2021, that branch of the plaintiff's motion which is to dismiss the appeals and the cross motions were held in abeyance and referred to the panel of Justices hearing the appeals for determination upon the argument or submission thereof.



Rivkin Radler, LLP, Uniondale, NY (Frank Raia and Cheryl F. Korman of counsel), for appellant Roman Catholic Archdiocese of New York.
Traub Lieberman Straus & Shrewsberry, LLP, Hawthorne, NY (Robert S. Nobel of counsel), for appellant Church of Immaculate Heart of Mary.
Grant & Eisenhofer, P.A., New York, NY (Barbara J. Hart, Irene R. Lax, and Samantha L. Breitner of counsel), for respondent.



DILLON, J.P.


OPINION & ORDER
This appeal presents an opportunity for our Court to discuss the interplay between CPLR 3024(b), which permits the striking of scandalous or prejudicial matter from pleadings, and the general pleading requirements of CPLR 3013 in the context of sex abuse claims brought under the recently-enacted CPLR 214-g.
I. Relevant Facts
The plaintiff alleges that he was sexually abused from 1965 through 1967, when he was 12 to 14 years old, by the defendant Edwin Gaynor, who was a physical education teacher and sports coach at the defendant Church of Immaculate Heart of Mary (hereinafter IHM) in Scarsdale. This action was commenced under the Child Victims Act (hereinafter CVA) against the defendants, Roman Catholic Archdiocese of New York (hereinafter the Archdiocese), IHM, and Gaynor, by a summons and complaint filed on November 19, 2019, and an amended complaint filed on February [*2]21, 2020. The amended complaint alleges causes of action sounding in negligence, negligent training and supervision of employees, negligent retention of employees, intentional infliction of emotional distress, negligent infliction of emotional distress, assault, and premises liability. The plaintiff's "wherefore" clause includes prayers for awards of both compensatory and punitive damages.
The amended complaint specifically alleges, inter alia, that the Archdiocese and IHM (hereinafter together the defendants) knew or should have known of Gaynor's abuse of boys and that, despite such knowledge, they breached their duty by failing to protect the plaintiff from harm. As relevant to this appeal, paragraphs 23 through 28 of the amended complaint allege as follows:
"23. Upon information and belief, Gaynor writes, 'Re. David Pisula, I was not unkind to him in a couple of instances as claimed but I was guilty of molestation.'
"24. Upon information and belief, Defendant Gaynor recently admitted to molesting at least one additional boy in the 1960s while he was employed at IHM in a letter he sent to Plaintiff's counsel, received on December 16, 2019.
"25. Upon information and belief, Gaynor's letter stated: 'My confession as I recall I was sitting at my desk . . . he sat on my lap to use the phone (to call home for a ride, I think) and then I molested him.'
"26. Upon information and belief, Gaynor also stated that he was 'hoping' that writing a letter to a boy he abused years earlier 'would be the beginning of forgiveness and our getting back together in friendship as we enjoyed before my abuse 42 years before.'
"27. Upon information and belief, prior to becoming a gym teacher and coach at IHM, Gaynor sexually abused at least one other boy when he was a school coach at the Church of St. Bernard Parish School, in White Plains, in approximately 1959 to 1961.
"28. Upon information and belief, according to correspondence from Gaynor, dated July 26, 2014, to another survivor of his molestation who attended IHM, Gaynor 'coached basketball for 26 years and baseball, taught phys. ed., had a summer evening boys club 2 years, a day camp for 23 years, an overnight camp and a basketball camp for 8 years.'"
Paragraphs 23 and 28 of the amended complaint each included an embedded copy of handwritten letters dated December 12, 2019, and July 26, 2014, respectively, purportedly created and signed by Gaynor, which reflect the information quoted in those paragraphs of the amended complaint. The letter dated December 12, 2019, contains underlining beneath the words "I was guilty of molestation," but adds "as in my report re R.L.," and "I will get to the others . . . as soon as I can." The letter dated July 26, 2014, which is addressed to a recipient whose name is redacted, includes a statement, inter alia, that Gaynor "coached basketball for 26 years and baseball, taught phys. ed., had summer evening boys club 2 years, a day camp for 23 years, an overnight camp and a basketball camp for 8 years." The letter dated July 26, 2014, also contains a statement that "[s]omeone did a real job on me after my 3 years of coach [sic] with [redacted] at IHM and I think I know who started it. It was ignorant, cowardly, and vicious. But so it goes." Paragraph 26 of the amended complaint likewise includes an embedded copy of handwritten material signed by "Edwin Gaynor" on December 12, 2019, reflecting the statements attributed to him in the body of that same paragraph.
On February 25, 2020, the Archdiocese moved pursuant to CPLR 3024(b) to strike scandalous or prejudicial matter from the amended complaint. IHM submitted an affirmation of counsel in support of the Archdiocese's motion and, inter alia, adopted the exhibits submitted by the [*3]Archdiocese. The Archdiocese argued that paragraph 23 of the amended complaint referenced the alleged molestation of another survivor of sex abuse, R.L., and "others," which had no bearing upon the issues of liability raised in this action, and which was therefore irrelevant, scandalous, and prejudicial to the Archdiocese. The Archdiocese similarly argued that paragraphs 24, 25, and 26 were scandalous and prejudicial in that they alleged that Gaynor admitted molesting another boy in the 1960s, and quoted Gaynor's description of the molestation of R.L. The Archdiocese likewise objected to the allegations of paragraph 27 involving yet another sexual abuse survivor from a different school, of the Church of St. Bernard's Parish (hereinafter St. Bernard's), between and including 1959 and 1961. Further, the Archdiocese objected to the allegation in paragraph 28 that the recipient of Gaynor's letter dated July 26, 2014, was "another survivor of his molestation." The Archdiocese sought to strike from the amended complaint the copies of the letters embedded in these various paragraphs and the allegations making reference to them, on the ground that their inclusion was intended by the plaintiff to inflame and unduly influence the jury to the detriment of the defendants' right to a fair trial.
The plaintiff, in opposing the motion, argued that all information contained in the amended complaint was proper and relevant to overarching issues of actual and constructive notice; Gaynor's intent, motive, identity, modus operandi, and lack of mistake; the Archdiocese's conduct of moving sexual offenders from institution to institution; and punitive damages. The plaintiff contended that any factual allegations in a pleading which have any bearing upon the subject matter of the action cannot be stricken as a matter of law.
By order dated August 20, 2020, the Supreme Court denied the Archdiocese's motion, finding that the purported prejudicial information contained in paragraphs 23 through 28 of the amended complaint was all relevant to the plaintiff's claims of abuse, to the defendants' knowledge of the abuse, and as admissions or declarations against interest by Gaynor himself.
The defendants separately appeal from the Supreme Court's order. For reasons discussed below, we modify the order appealed from to the limited extent of deleting from paragraph 28 of the amended complaint the specific allegation that Gaynor's letter dated July 26, 2014, was "to another survivor of his molestation who attended IHM."
II. The Particulars of CPLR 3024(b)
Prejudicial language in a pleading might not necessarily be scandalous in a given action. Conversely, language in a pleading that is arguably scandalous in nature may not be prejudicial, if necessary to the nature of the pleading. "Scandalous" or "prejudicial" matters raised in a pleading should therefore be thought of in the disjunctive rather than the conjunctive. Scandalous matter may be stricken from a pleading regardless of whether it is prejudicial, and vice versa, but also if the matter contained in the pleading is unnecessary.
Further, the statute speaks to the striking of scandalous or prejudicial "matter" in a pleading. "Matter" is a term that also appears in the CPLR's introductory discovery statute, section 3101(a), which mandates that there be full disclosure of all "matter" material and necessary to the prosecution or defense of an action. Matter is a procedural term in both contexts that broadly applies to facts, information, and evidence (see Hildebrandt v Stephan, 42 Misc 3d 719, 721 n 1 [Sup Ct, Erie County]). Matter within the scope of CPLR 3024(b) may include written documents annexed to or included within a pleading as otherwise permitted by CPLR 3014, or references to such documents.
The statute should not be viewed in a vacuum. CPLR 3024(b), which allows for the striking of scandalous or prejudicial matter unnecessarily inserted in a pleading, should be viewed in conjunction with other sister sections of CPLR article 30. CPLR 3013 requires that pleadings be sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences intended to be proved, and the material elements of each cause of action or defense. CPLR 3015 requires particularity regarding contractual conditions precedent, corporate status, and plaintiffs' licensure to do business in certain contractor matters involving consumers. CPLR 3016 requires particularity in specified actions, including but not limited to defamation, separation or divorce, actions upon a judgment, the applicability of foreign law, the itemization of goods sold and delivered or labor services for breach of contract, and claimed automobile-related threshold injuries subject to the no fault insurance law. And CPLR 3024(a) protects parties from pleadings that are vague or ambiguous, providing a mechanism for the court to order more definite statements when warranted to enable the responding party to properly frame [*4]a response to the pleading.
What qualifies as scandalous or prejudicial matter in a given complaint is sui generis. An allegation that a defendant has abused a spouse has no apparent relevance in an action brought solely for damages arising out of an arms-length breach of contract, but such an allegation has central relevance in a complaint seeking a divorce on the ground of cruel and inhuman treatment (see Domestic Relations Law § 170[1]). An allegation that a defendant stole money has no apparent relevance in an action against a landlord for an unsafe premises condition, but may be an essential allegation in a complaint seeking damages arising out of a civil fraud. An allegation that a defendant is a tax delinquent has no relevance in an action seeking damages for injuries sustained in a two-vehicle automobile collision, but may have central relevance in an action involving municipal tax liens. The relevance and propriety of allegations must therefore be viewed in the context of the general facts necessary for giving the court and the parties notice of the transactions or occurrences at issue, for addressing the material elements of the asserted causes of action or defenses (see CPLR 3013), and for meeting any particularity requirements that might be additionally required under CPLR 3015 or 3016 or other authority.
Matter that is scandalous or prejudicial will not be stricken if it is relevant to a cause of action in a complaint or petition or its material elements (see New York City Health & Hosps. Corp. v St. Barnabus Community Health Plan, 22 AD3d 391; Cassissi v Yee, 46 Misc 3d 552, 557 [Sup Ct, Westchester County]). However, the mere striking of matter from a pleading under CPLR 3024(b) does not, ipso facto, preclude related facts or evidence from being admitted at a later trial (see Wegman v Dairylea Coop, 50 AD2d 108, 111; Schachter v Massachusetts Protective Assn., 30 AD2d 540). The discussion of particular pieces of evidence or forms of proof need not be included in an otherwise sufficient complaint as a precondition to their pretrial discoverability or their admissibility at trial. In other words, there is a distinction between what is relevant to factual averments in a pleading to give proper notice of transactions and occurrences and to address the material elements of the causes of action, versus what evidence may be relevant and admissible at the trial of the action to prove them.
CPLR 3024(b) is a procedural rule that is not raised with particular frequency. Most always, attorneys draft pleadings with an appropriate level of relevant factual averments and elemental detail, each tailored to the unique procedural needs of the case. The statute nevertheless serves a worthwhile purpose of assuring that civil pleadings, which are public documents except for those involving matrimonial and family relief, not contain matter that unnecessarily scandalizes or prejudices the adversary party either within the litigation or beyond it.
Motions to strike scandalous or prejudicial matter from pleadings are generally disfavored (see Riesenberger v Sullivan, 1 AD2d 1050, 1051; City of New York v Torkian Group LLC, 67 Misc 3d 1210[A], 2020 NY Slip Op 50486[U], *2 [Sup Ct, New York County]; Chiapperini v Gander Mtn. Co., Inc., 48 Misc 3d 865, 881 [Sup Ct, Monroe County]). Whether to strike allegedly scandalous or prejudicial matter from a pleading in a given instance is left to the discretion of the trial court (see Matter of Albany Law School v New York State Off. of Mental Retardation & Dev. Disabilities, 19 NY3d 106, 126; Kaufman & Kaufman v Hoff, 213 AD2d 197, 199; Vice v Kinnear, 15 AD2d 619; Chiapperini v Gander Mtn. Co., Inc., 48 Misc 3d at 881).
Moreover, no appeal lies as of right from an order granting or denying a motion to strike scandalous or prejudicial matter (see CPLR 5701[b][3]; Cudjoe v Boriskin, 157 AD3d 654, 656; Le Bel v Donovan, 96 AD3d 415, 417; O'Callaghan v Stepfamily Found., 292 AD2d 579, 580; C.B. Foods v Quarex Co., 204 AD2d 504, 505; Alberi v Rossi, 108 AD2d 833), presumably as the statutory remedy is to merely "correct" a pleading that otherwise continues to undergird the action. Indeed, CPLR 3024(b) greatly restricts the circumstances under which matter may be stricken from a pleading, and CPLR 5701(b)(3) has the further effect of restricting the appellate remedies. Nevertheless, a party aggrieved by a CPLR 3024(b) determination may seek leave to appeal by an application to the trial or appellate court (see CPLR 5701[c]; Manhattanville Coll. v James John Romeo Consulting Engr., P.C., 28 AD3d 613). In instances when leave is granted, the standard of review for the appellate court is whether the trial court's order to strike matter, or not strike matter, was an improvident exercise of its discretion (see JC Mfg. v NPI Elec., 178 AD2d 505, 506; Vice v Kinnear, 15 AD2d at 619).
III. Leave to Appeal
We have decided to deny that branch of the plaintiff's motion which is to dismiss the appeals from the order dated August 20, 2020, and instead grant the defendants' cross-motions for [*5]leave to appeal. We do so because the instant action was brought under the fairly-new CVA, where interpretive case law is at an incipient stage, and because this appeal provides the Appellate Division with a rare opportunity to speak to CPLR 3024(b) pleading issues in such cases, as may be relevant to the bench and bar in future litigations.
IV. The Allegations in the Amended Complaint
An increased number of actions involving alleged sex abuse have been filed in New York courts as a result of the New York State Legislature's passage of the CVA in 2019. By that statute, victims of certain qualifying sexual abuse claims that were otherwise time-barred were given one year and six months from the date of enactment of the statute, February 14, 2019, to commence a revived action to recover damages for physical, psychological, or other injuries (see L 2019, ch 11, § 3). The statute was amended the following year to extend the deadline for commencing qualifying actions an additional year, to August 14, 2021 (see L 2020, ch 130). This action was timely commenced pursuant to CPLR 214-g.
Allegations of sexual abuse are, by their nature, definition, and essence, scandalous and prejudicial on some obvious level. At the same time, factual averments about sexual abuse are necessary in any action where those allegations form the predicate for an award of damages, to state a cause of action generally and pursuant to the CVA specifically (see CPLR 3013, 3211[a][7]). Here, the defendants implicitly seek to solve this conundrum by limiting the scope of the CPLR 3024(b) motion to the striking of allegations involving alleged sex abuse survivors other than the plaintiff, including R.L., a student at St. Bernard's, the recipient of Gaynor's letter dated July 26, 2014, whose name has been redacted from the materials, and "others," as well as to strike writings relating to the foregoing. The defendants make an additional argument that allegations about survivors whose molestations chronologically followed the plaintiff's abuse from 1965 through 1967 cannot be retroactively imputed to what the defendants knew or should have known from 1965 through 1967, rendering those allegations not only scandalous and prejudicial, but irrelevant.
CPLR 3024(b) presents an instance where courts must engage in weighing and evaluating the competing interests of parties, by examining the relevance of allegations in pleadings against any scandalousness or prejudice occasioned by the allegations. The statute involves, in effect, a two-part test. The first part is whether the allegation that a party seeks to strike is, in fact, scandalous or prejudicial. If the nature and content of an allegation is not actually scandalous or prejudicial, the court's analysis ends quickly and there is nothing to strike from the pleading (see Wells Fargo Bank N.A. v Ho-Shing, 168 AD3d 126, 135 [allegation that defendant defaulted on a note does not rise to the level of being scandalous or prejudicial]). A logical reading of the plain language of the statute indicates that matter which is merely unnecessary should not be stricken from a pleading unless it is first shown to be scandalous or prejudicial. Indeed, even the most prolix complaint that is chock-full of unnecessary and irrelevant allegations is not subject to any motion to trim the pleading to its necessary core—unless the complaint contains allegations that are scandalous or prejudicial. Even then, only the scandalous or prejudicial matter is excised, leaving the other irrelevancies intact.
When allegations in a pleading are scandalous or prejudicial, the court then reaches the second part of CPLR 3024(b), which is to determine whether the allegation has been inserted into the pleading "unnecessarily." The word "unnecessarily" is a key word in the statute. "Unnecessarily" speaks to the matter's relevance to the action (see Irving v Four Seasons Nursing & Rehabilitation Ctr., 121 AD3d 1046, 1048; Soumayah v Minnelli, 41 AD3d 390, 393). Allegations about matters that are irrelevant to the viability of a cause of action or defense, which are also scandalous or prejudicial to the adversary party, may be stricken from the pleading (see Irving v Four Seasons Nursing & Rehabilitation Ctr., 121 AD3d at 1048; Kinzer v Bederman, 59 AD3d 496, 497; Matter of Plaza at Patterson, LLC v Clover Lake Holdings, Inc., 51 AD3d 931, 932; Soumayah v Minnelli, 41 AD3d at 393).
In law, relevance is sometimes tempered by whether the probative value of certain matter is outweighed by the prejudice that may be caused to a party. A classic example is found in criminal law, where a defendant's prior criminal, vicious, or immoral conduct may or may not be admissible on cross-examination if the defendant testifies, depending on whether the probative value of the conduct outweighs the prejudice to the defendant caused by its admission (see People v Sandoval, 34 NY2d 371, 377-378). In civil actions, a defendant's financial circumstances may be admissible in evidence in an action where punitive damages are sought, on the theory that the probative value outweighs the prejudice to the defendant in assessing the appropriate amount of such [*6]damages (see Rose v Brown & Williamson Tobacco Corp., 10 Misc 3d 680, 709 [Sup Ct, New York County]). The admission of other forms of evidence prompts the evaluation of whether the admission of certain arguably-prejudicial material is outweighed by its probative value to issues of the action (see e.g. Kish v Board of Educ. of City of N.Y., 76 NY2d 379, 385-386 [proof of plaintiff's retirement probative to lost earnings]; Curtin v J.B. Hunt Transp., Inc., 79 AD3d 1608, 1609-1610 [reference to insurance]; Lynch v New York City Civilian Complaint Bd., 64 Misc 3d 315, 333 [Sup Ct, New York County] [weighing probative value and prejudice of prior unsubstantiated, unfounded, or withdrawn civilian complaints]). In the same vein, courts sometimes admit otherwise prejudicial evidence for a limited, defined purpose, with appropriate limiting instructions to the jury (see e.g. Salm v Moses, 13 NY3d 816, 818 [admission of existence of defendant's liability policy as relevant to defendant's contested ownership and control of the premises]). Where mere pleadings are concerned under CPLR 3024(b), as here, courts will engage in a similar exercise of weighing the relevance of scandalous or prejudicial matter to the transactions or occurrences alleged and the material elements of the causes of action or defenses.
There are qualitative distinctions between the allegations contained in each of the contested paragraphs of the plaintiff's amended complaint. Each such paragraph must be examined separately because they raise different factual and legal considerations.
A. Paragraph 23
Paragraph 23 alleges, inter alia, that Gaynor wrote in a letter: "Re. David Pisula, I was not unkind to [Pisula] in a couple of instances as claimed but I was guilty of molestation."
While some of the allegations of paragraph 23 are facially scandalous by nature, we find that they are not unnecessary to the amended complaint, and the Supreme Court did not improvidently exercise its discretion in declining to strike them under CPLR 3024(b). The broader statement, "I was not unkind to [Pisula] in a couple of instances as claimed but I was guilty of molestation," is an admission by Gaynor—a named codefendant in this action—of conduct that is central to the plaintiff's causes of action. CPLR 3013 requires, among other things, that pleadings address the elements of each cause of action or defense. Gaynor's admission to molesting the plaintiff factually establishes, at a bare minimum, a necessary element of the plaintiff's sixth cause of action, to recover damages for assault, which includes physical conduct placing the plaintiff in imminent apprehension of harmful contact (see Macareno v City of New York, 187 AD3d 1164; Kuznitz v Funk, 187 AD3d 1006). Gaynor's admission also supports the plaintiff's fourth cause of action, sounding in the intentional infliction of emotional distress, where the elements of that claim include, inter alia, extreme and outrageous conduct and an intent to cause, or the disregard of a substantial likelihood of causing, severe emotional distress (see Roe v Domestic & Foreign Missionary Socy. of the Prot. Episcopal Church, _____ AD3d _____, 2021 NY Slip Op 05360 [2d Dept] [other necessary elements being causation, and severe emotional distress]; Ratto v Oliva, 195 AD3d 870; Klein v Metropolitan Child Servs., Inc., 100 AD3d 708, 710).
As for the defendants' vicarious liability for Gaynor's admitted conduct, the plaintiff asserts discrete negligence-based causes of action regarding Gaynor's hiring, training, supervision, and retention, premised upon allegations of what the defendants knew or should have known at the time of Gaynor's propensity for sexual abuse. Gaynor's admission to the molestation of Pisula relates to those causes of action as well. Were there no sexual abuse at all, there would be nothing the Archdiocese could have known, or should have known, at that time. Moreover, the amended complaint provides factual detail in paragraphs 36 to 48 about not one, but two separate alleged instances of Pisula having been sexually abused by Gaynor. The repetitiveness of abusive conduct, if true, renders Gaynor's admission even more relevant to the tort element of what the defendants knew or should have known of Gaynor's propensities.
The nature of Gaynor's admitted conduct may also arguably support the prayer for relief in the "wherefore" clause of the amended complaint for an award of punitive damages. Punitive damages are not a free-standing cause of action (see Jean v Chinitz, 163 AD3d 497, 497-498; Gershman v Ahmad, 156 AD3d 868; Randi A.J. v Long Is. Surgi-Ctr., 46 AD3d 74, 80). They are instead properly raised, as here, as a prayer for relief in the "wherefore" clause of the pleading. Punitive damages in actions involving negligent hiring, retention, or supervision generally require conduct evincing a high degree of moral culpability, so flagrant as to transcend simple carelessness, or which constitutes willful or wanton negligence or recklessness so as to evince a conscious disregard for the rights of others (see Coville v Ryder Truck Rental, Inc., 30 AD3d 744).
The copy of the letter in paragraph 23 of the amended complaint also makes reference [*7]to Gaynor addressing "the others (incl. David Pisula) as soon as I can." There is no basis for striking the letter's reference to "others," as later paragraphs of the amended complaint make references to other sexual abuse survivors, which shall not be stricken for reasons set forth below.
Accordingly, since the allegations contained in paragraph 23 of the amended complaint are not unnecessarily inserted into the pleading, the Supreme Court providently exercised its discretion in denying the Archdiocese's motion to strike that paragraph.
B. Paragraphs 24, 25, and 26
Paragraphs 24, 25, and 26 of the amended complaint allege that Gaynor sent a letter to the plaintiff's counsel, which was received on December 16, 2019, in which he described in detail his sexual molestation of a survivor identified only as R.L. In the letter, Gaynor discusses his prior interactions with R.L. and R.L.'s family. Gaynor describes having previously written a letter to R.L., hoping that the letter would be kept confidential, and further hoping that the letter "would be the beginning of forgiveness and our getting back together in friendship." Notably, the letter to the plaintiff's counsel states that Gaynor abused R.L. "42 years before" the letter Gaynor sent to R.L., but does not identify when Gaynor sent the letter to R.L., so it cannot be determined from the allegations in the complaint exactly when R.L. was abused. However, the Archdiocese concedes in its brief on appeal that the events involving R.L., as alleged in a separate lawsuit by R.L., occurred from 1967 through 1969. The timeframe of R.L.'s sexual molestation therefore overlaps the plaintiff's 1965 through 1967 timeframe for one year, 1967, but is subsequent to the plaintiff's timeframe for 1968 and 1969.
The defendants argue that events which are alleged to have occurred to other sexual abuse survivors subsequent to those alleged by the plaintiff should be stricken, as later events cannot "time travel" back to 1965 through 1967 to help establish what the defendants knew or should have known during those years of Gaynor's acts or propensities.
As a general proposition, we agree that allegations involving other survivors of sexual abuse, occurring years after the plaintiff's alleged abuse, are generally not relevant, and are hence "unnecessary," to the discrete facts involving the plaintiff and the elements of the plaintiff's various asserted causes of action. Later events are generally not probative to what the defendants knew or should have known in 1965 through 1967 for an obvious reason recognized by our courts since at least 1873, that defendants cannot be imputed with knowledge about events that have not yet occurred (see Dougan v Champlain Transp. Co., 56 NY 1, 8). Negligence can only be determined "by what was known before and at the time of the accident," and cannot be inferred from subsequent acts (id. at 8; see Quinn v City of New York, 145 App Div 195, 197; Alfieri v Carmelite Nursing Home, Inc., 29 Misc 3d 509, 511 [Civ Ct, Richmond County]). Parties generally may not prove that a person committed an act on one occasion by showing that he or she committed an act on a later occasion (see Dougan v Champlain Transp. Co., 56 NY at 8; Mazella v Beals, 27 NY3d 694, 709; Matter of Brandon, 55 NY2d 206, 210-211).
Here, in examining the first part of the CPLR 3024(b) test, the allegation that Gaynor admitted to the molestation of R.L., and his description of those events, is scandalous by its very nature. As to the second part of CPLR 3024(b), paragraphs 24 and 25, referencing Gaynor's letter received by the plaintiff's counsel on December 16, 2019, present a complication in that part of the allegations pertain to an overlap year (1967), while part of the allegations pertain to later years (1968 through 1969). We recognize that in matters of sexual abuse involving minors, as recounted by survivors years after the fact, dates and times are sometimes approximate and incapable of calendrical exactitude. Given that there is at least some overlap between the time and place involving both the plaintiff and R.L., the chronological approximations that may be at play, and the Supreme Court's inability to "parse" the three years of R.L.'s abuse at the mere pleading stage of the action, we find that the allegations in paragraphs 24 and 25 regarding R.L. are not "unnecessary" and need not be stricken, as they are sufficiently proximate and relevant to the elements of the plaintiff's asserted causes of action. By extension, any writing by Gaynor alleged in paragraph 26, that he had written R.L. for forgiveness, is sufficiently related to his admission of sexual abuse, and there is therefore no basis for it to be stricken from the amended complaint under CPLR 3024(b).
Accordingly, the Supreme Court providently denied that branch of the motion pursuant to CPLR 3024(b) which was to strike paragraphs 24, 25, and 26 of the amended complaint.
C. Paragraph 27
Paragraph 27 of the amended complaint alleges that Gaynor sexually abused a boy at St. Bernard's from 1959 through 1961. This alleged abuse necessarily precedes the plaintiff's [*8]allegations of his own sexual abuse from 1965 through 1967. Those allegations of earlier abuse, while scandalous in nature under the first part of CPLR 3024(b), are not unnecessary to the plaintiff's amended complaint under the second part of the statute.
More specifically, the allegations about prior sexual abuse at St. Bernard's relate directly to the elements of the plaintiff's various causes of action for common-law negligence, negligent hiring, negligent supervision, negligent retention, and the negligent infliction of emotional distress. Each of these causes of action include, as applicable here, the elements of a defined duty, a breach of that duty, and proximate causality between the breach and the plaintiff's injuries (see Pasternack v Laboratory Corp. of Am. Holdings, 27 NY3d 817, 825 [negligence]; Solomon v City of New York, 66 NY2d 1026, 1027 [same]; Levi v Nardone, 178 AD3d 692, 693 [same]; Beninati v City of Troy, 163 AD3d 1241, 1242 [negligent supervision]; Gonzalez v City of New York, 133 AD3d 65, 68 [negligent retention]; Kelly G. v Board of Educ. of City of Yonkers, 99 AD3d 756, 757-758 [negligent supervision]; Kennedy v McKesson Co., 58 NY2d 500, 504 [same]; Lando v State of New York, 39 NY2d 803, 804-805 [negligent infliction of emotional distress]; Ferrara v Galluchio, 5 NY2d 16, 22 [same]). The causes of action for negligent hiring, supervision, and retention implicate what the defendants knew or should have known when Gaynor began working at IHM, and when he was supervised and retained there (see S.C. v New York City Dept. of Educ., 97 AD3d 518, 519-520; Shor v Touch-N-Go Farms, Inc., 89 AD3d 830, 831). Gaynor's history at St. Bernard's bears direct relevance to what the Archdiocese knew or should have known about Gaynor's acts or propensities at the later relevant times.
Moreover, the plaintiff alleges in the amended complaint that the Archdiocese had transferred Gaynor from institution to institution, which would necessarily include the transfer from St. Bernard's to IHM. The allegations about Gaynor committing sexual abuse at St. Bernard's may be relevant to the issue of punitive damages if the Archdiocese's alleged transfer of Gaynor to IHM occurred with notice of the prior misconduct at St. Bernard's. Those allegations, if proven, might constitute willful or wanton negligence or recklessness evincing a conscious disregard for the rights of others, including the plaintiff, permitting consideration of an award of punitive damages (see Coville v Ryder Truck Rental, Inc., 30 AD3d at 745).
Accordingly, the Supreme Court providently exercised its discretion in denying that branch of the motion which was to strike paragraph 27 of the amended complaint.
D. Paragraph 28
Paragraph 28 alleges that a letter purportedly signed by Gaynor, dated July 26, 2014, was sent to "another survivor of [Gaynor's] molestation who attended IHM." The identity of the recipient of that letter, and the identity of others close to the recipient and other identifying information, was redacted from the copy of the letter which was embedded in paragraph 28 of the amended complaint. In examining the first part of CPLR 3024(b), the letter contains an innocuous description of Gaynor's decades-long history of teaching or overseeing physical education, extracurricular sports, and day and overnight camps. In the letter, Gaynor also expresses fondness for, and good memories of, the letter's recipient and family. None of that information, which comprises the bulk of the letter, is necessarily scandalous, prejudicial, or even inculpatory on its face (see Wells Fargo Bank N.A. v Ho-Shing, 168 AD3d at 135). Also, the language does not address "employment" per se or the identity of any particular employer responsible for Gaynor's hiring, supervision, or retention, or otherwise discuss Gaynor's responsibilities in any scandalous or prejudicial terms. There is therefore no basis to strike the letter from the amended complaint under CPLR 3024(b), as it fails to qualify as scandalous or prejudicial matter under the first part of CPLR 3024(b).
The same letter mentions that "[s]omeone did a real job on me after my 3 years of coach [sic] with [redacted] at IHM, and I think I know who started it. It was ignorant, cowardly, and vicious. But so it goes." That portion of the letter also is not scandalous or prejudicial, and, if anything, reads as if Gaynor was claiming he had been wrongfully accused of something. The Supreme Court therefore providently exercised its discretion in denying that branch of the motion which was to strike the Gaynor letter dated July 26, 2014, as contained in paragraph 28 of the amended complaint.
We reach a different conclusion, however, as to the separate allegation in paragraph 28 that the recipient of the July 26, 2014 letter was "another survivor of [Gaynor's] molestation who attended IHM." While Gaynor stated that the recipient of the letter was 14 years old in 1986, nothing in the letter identifies the recipient as a survivor of sexual molestation. Nothing on the face of the [*9]letter is a direct admission by Gaynor that he abused anyone or engaged in any misconduct. Under the first part of CPLR 3024(b), the allegation in paragraph 28 that another person was sexually abused by Gaynor is scandalous and prejudicial by its nature.
Further, the allegation in paragraph 28 that the recipient of the letter was another survivor of sexual molestation is unnecessary to the amended complaint, and should have been stricken under the second part of CPLR 3024(b). Whether a person other than the plaintiff was sexually abused by Gaynor well after the occurrences alleged in this case is not a fact that the plaintiff must plead and prove in order to be entitled to a potential judgment in his favor on the causes of action asserted. Arithmetically, based on the dates set forth, any sexual abuse that might have occurred against the recipient of the letter must necessarily have occurred a decade or two after the alleged sexual abuse of the plaintiff had already occurred. Any such subsequent abuse is not relevant to the issue of whether the defendants should be held liable for negligence, negligent hiring, negligent supervision, negligent retention, intentional or negligent infliction of emotional distress, assault, or premises liability for events from 1965 through 1967 (see Mazella v Beals, 27 NY3d at 709; Matter of Brandon, 55 NY2d at 210-211; Dougan v Champlain Transp. Co., 56 NY at 8), since negligence is measured by what is known at the time of an occurrence. Events that may have occurred at a later time, and in this instance a decade or two after the fact, cannot be retroactively applied by the plaintiff for pleading purposes to establish the defendants' alleged negligence from 1965 through 1967.
The plaintiff further argues that events involving the recipient of the letter are relevant to establishing at trial Gaynor's intent, motive, identity, modus operandi, and lack of mistake, in proving that Gaynor sexually assaulted the plaintiff, and that on those grounds, even allegations of subsequent acts should be permitted in the amended complaint. In essence, the plaintiff is raising a civil version of the criminal Molineux theory (see People v Molineaux, 168 NY 264), for introducing evidence of separate crimes or bad acts that would otherwise be inadmissible in the present action, though the plaintiff does not cite Molineux by name. Molineux has been applied by decisional law primarily to criminal actions, rather than civil actions, and the application of Molineux exceptions in civil actions are few and far between. Nevertheless, they have been recognized in civil actions where appropriate (see e.g. Mazella v Beals, 27 NY3d at 709; Matter of Brandon, 55 NY2d at 210-211), and could potentially apply to this and similarly-situated litigations. The plaintiff's inclusion of Molineux-esque matters in the amended complaint reflects a fundamental blurring of the difference between a "pleading," the purpose of which is to give notice of the transactions or occurrence intended to be proved and the material elements of each cause of action or defense (see CPLR 3013), and "evidence," which is separately produced in discovery or later at trial to prove causes of action or defenses. Information relating to similar events against other persons to demonstrate intent, motive, identity, modus operandi, and lack of mistake is evidence, when it meets the test of admissibility. But it is not part of the occurrences directly complained of by the plaintiff for factually stating any discrete cause of action here, and is not related to any element of the causes of action that have been asserted.
Further analogizing to criminal law, CPL 200.60(1) prohibits the inclusion in an indictment of other convictions unless doing so is a necessary element raising the indicted offense from a lower level to a higher level, and even then, the prior conviction must be identified by an improvised name rather than being identified as a specific previous conviction itself (see People v Burgess, 89 AD3d 1100). Pleadings should not be front-loaded with evidence, as the pleading stage is not the point in litigation where evidence is presented and actions are tried. Even outrageous or patterned behavior that might warrant the imposition of punitive damages may only be based upon acts or omissions that occur prior to or during the time frame applicable to each plaintiff's own causes of action, and cannot be imposed for conduct involving other individuals aggrieved by the same defendant at a later time. In other words, as stated by this Court, "it would be more in keeping with sound discretion and the interests of justice to preserve [the] defendant's right to a fair trial by not permitting [the] plaintiff to invoke the liberal rule with respect to pleadings and allege the aforesaid prejudicial unnecessary matter under the guise of relevancy" (Schachter v Massachusetts Protective Assn., 30 AD2d at 540).
The irrelevance of the existence of another sexual abuse survivor a decade or two after the fact, at least for pleading purposes, is illustrated by a consideration of the elements of the various negligence-based causes of action contained in the amended complaint. None of the causes of action or matter asserted in the amended complaint need be pleaded with particularity (see CPLR [*10]3015, 3016; Selechnik v Law Off. of Howard R. Birnbach, 82 AD3d 1077, 1079-1080; Kenneth R. v Roman Catholic Diocese of Brooklyn, 229 AD2d 159, 162). None of the asserted causes of action in the amended complaint, nor the prayer for punitive damages, contain elements that render allegations about subsequent sexual abuse survivors necessary or relevant. Allegations that there was another survivor of Gaynor's abuse a decade or two after the plaintiff's abuse cannot be factored into what the defendants knew or should have known in 1965 through 1967, as the events of that later time had not yet occurred. The allegation that the recipient of Gaynor's letter dated July 26, 2014, is a survivor of sexual abuse is therefore unnecessary to the amended complaint even though, as noted, there is no CPLR 3024(b) basis to strike the seemingly-innocuous letter itself.
Our conclusion on this point is consistent with the result reached by the Appellate Division, First Department, in Breest v Haggis (180 AD3d 83), wherein a plaintiff, seeking damages for a violation of New York City's Victims of Gender-Motivated Violence Protection Law (Administrative Code of City of NY § 10-1101 et seq.; hereinafter the VGM), alleged that three other women had accused the same defendant of rape or attempted rape. There, the Court determined that the allegation that other women were victimized by the same defendant was not necessary to satisfy the "animus" requirement of the VGM, as the plaintiff's allegations that she had been raped and sexually assaulted were singularly and internally sufficient to address that necessary element. The Court in Breest therefore struck from the complaint, pursuant to CPLR 3024(b), the allegations regarding the three other victims, on the ground that the allegations "serve[d] no purpose at this juncture and tend to prejudice the defendant" (Breest v Haggis, 180 AD3d at 95). We find Breest to be sufficiently similar to this case, even though its holding is narrowly focused on the animus element of the VGM. Here, the plaintiff, in contrast, alleges broadly-based causes of action sounding primarily in negligence. Notwithstanding, those differences present no meaningful distinction to the proposition that wrongful conduct against other persons is not a transaction or occurrence, or an element, of the plaintiff's own causes of action, if the wrongful conduct against other persons is not alleged to be chronologically prior to or concurrent with acts or omissions against the plaintiff.
E. All Letters Copied in the Amended Complaint, Generally
As to all of the letters purportedly written by Gaynor that were included within the plaintiff's amended complaint, we are not persuaded by the defendants' contention that they must be stricken because they were each written after the plaintiff allegedly was abused from 1965 through 1967. On this point, we agree with the plaintiff that what matters is not the timing of the letters, but their content, in driving the determination of what portions of the letters, if any, may be properly included in the amended complaint without violating CPLR 3024(b).
V. Bright Lines
The CVA has opened the New York courts to actions for physical, psychological, or other damages arising out of qualifying claims of sexual abuse, if commenced within the statutory window period of CPLR 214-g. While it is often stated that the untimeliness of an action does not extinguish the right to a recovery but only its remedy, the enactment of CPLR 214-g has revived the remedy for aggrieved plaintiffs. There may therefore be a recurrence of issues reflecting the tension between the pleading requirements of CPLR 3013 and 3024(b). Based upon the conclusions directly reached here, there are bright lines that should be followed in the future:
— Factual allegations about a plaintiff's own alleged sexual abuse will not be stricken from the complaint under CPLR 3024(b) as they are central and necessary to giving notice of the transaction or occurrence or series of transactions and occurrences, and the material elements of the cause(s) of action asserted.
— Factual allegations about a defendant's prior sexually-abusive conduct will not be stricken from the complaint under CPLR 3024(b) where one or more causes of action includes, as a necessary element, what acts or propensities an institutional defendant knew or should have known by the time of the plaintiff's own abuse.
— Factual allegations about a defendant's concurrent-in-time sexual abuse of another person will not be stricken from the complaint under CPLR 3024(b) where one or more causes of action includes, as a necessary element, what acts or propensities an institutional defendant knew or should have known by the time of the plaintiff's own abuse.
— Factual allegations about a defendant's subsequent relevant statements or conduct that specifically relate back to the sexual abuse of the plaintiff will not be stricken from the complaint under CPLR 3024(b).
— Factual allegations about a defendant's statements or conduct involving a [*11]subsequent sexual abuse survivor, other than the plaintiff, may be stricken from a complaint under CPLR 3024(b) on the ground that they are scandalous or prejudicial and not necessary to the elements of the plaintiff's specific cause(s) of action.
Ultimately, trial courts are vested with discretion in determining motions to strike pursuant to CPLR 3024(b), and there may be unique issues raised by pleadings in sexual abuse actions that are not covered by the facts and circumstances of this particular appeal, or which warrant alternate conclusions by the court in the proper exercise of its discretion.
VI. Miscellaneous
Nothing in this opinion is intended to influence any rulings that may need to be made by the Supreme Court about pretrial discovery or the admissibility of any evidence at trial. Indeed, should the court consider permitting subsequent bad acts attributable to Gaynor into evidence at the trial of this action as may be relevant to intent, motive, identity, modus operandi, or lack of mistake, or admissions regarding any such subsequent events, the court may render whatever evidentiary ruling it deems appropriate under the facts of the case and the applicable rules of evidence (see Wegman v Dairylea Coop., 50 AD2d at 111; Schachter v Massachusetts Protective Assn., 30 AD2d at 540).
The parties' remaining contentions are either without merit or academic in light of our determination.
Accordingly, that branch of the plaintiff's motion which is to dismiss the appeals is denied, the cross motion of the Archdiocese, and the separate cross motion of IHM, for leave to appeal from the order are granted, the order is modified, on the law, the facts, and in the exercise of discretion, by deleting the provision thereof denying that branch of the motion of the Archdiocese, joined in by IHM, which was to strike from paragraph 28 of the amended complaint the allegation that the recipient of a letter dated July 26, 2014, was "another survivor of his molestation who attended IHM," and substituting therefor a provision granting that branch of the motion, and, as so modified, the order is affirmed.
CHRISTOPHER, WOOTEN and ZAYAS, JJ., concur.
Upon the papers filed in support of the motion and the cross motions, the papers filed in opposition thereto, and upon the argument of the appeals, it is
ORDERED that the branch of the plaintiff's motion which is to dismiss the appeals is denied; and it is further,
ORDERED that the cross motion of the defendant Roman Catholic Archdiocese of New York, and the separate cross motion of the defendant Church of Immaculate Heart of Mary, for leave to appeal from the order are granted; and it is further,
ORDERED that the order is modified, on the law, the facts, and in the exercise of discretion, by deleting the provision thereof denying that branch of the motion of the defendant Roman Catholic Archdiocese of New York, joined in by the defendant Church of Immaculate Heart of Mary, pursuant to CPLR 3024(b) which was to strike from paragraph 28 of the amended complaint the allegation that the recipient of a letter dated July 26, 2014, was "another survivor of his molestation who attended IHM," and substituting therefor a provision granting that branch of the motion; as so modified, the order is affirmed; and it is further,
ORDERED that one bill of costs is awarded to the plaintiff.
ENTER:
Maria T. Fasulo
Clerk of the Court