Booth v City of New York (2023 NY Slip Op 51442(U))

[*1]

Booth v City of New York

2023 NY Slip Op 51442(U)

Decided on December 21, 2023

Supreme Court, Kings County

Frias-Colón, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 21, 2023
Supreme Court, Kings County

James Booth, Michael Gala, Joseph Jardin, Frank Leeb, Michael Massucci, Carla Murphy, and Fred Schaaf, PLAINTIFFS,

against
The City of New York, Philip Banks III, as Deputy Mayor for Public Safety and in his Individual Capacity, Laura Cavanagh, as Commissioner of the New York City Fire Department and in her Individual Capacity, Joseph Pfeifer, as First Deputy Commissioner and in his Individual Capacity, Luis Martinez, as Chief of Staff and in his Individual Capacity, and JonPaul Augier, as Deputy Commissioner of FDNY Infrastructure & Innovation and in his Individual Capacity, DEFENDANTS.

Index No. 509034/2023

For Plaintiffs: 
James Walden of Walden Macht & Haran, LLP, 1 Battery Park Plaza 34th Fl., NY, NY 10004, 
212-335-2031 jwalden@wmhlaw.com
For Defendants: 
Hayley Nicole Bronner of New York City Law Dept., 100 Church Street, NY, NY 10007
212-356-2460 habronne@law.nyc.gov

Patria Frias-Colón, J.

Recitation as per CPLR §§ 2219(a) and/or 3212(b) of papers considered on review of this motion:
NYSCEF Doc #s 38-39; 45; 47 by Defendants
NYSCEF Doc #s 23-31; 43; 46 by Plaintiffs
Upon the foregoing cited papers and oral argument heard on November 8, 2023, Defendants City of New York ("City"); Philip Banks III, as Deputy Mayor for Public Safety and in his individual capacity ("Banks"); Laura Cavanagh, as Commissioner of the New York City Fire Department ("FDNY") and in her individual capacity ("Cavanagh"); Joseph Pfeifer, as First Deputy Commissioner and in his individual capacity ("Pfeifer"); Luis Martinez, as Chief of Staff and in his individual capacity ("Martinez"); and JonPaul Augier, as Deputy Commissioner of FDNY Infrastructure & Innovation and in his individual capacity ("Augier"; collectively with the City, Banks, Cavanagh, Pfeifer, and Martinez, "Defendants"), jointly move, pre-answer, for an Order, pursuant to CPLR § 3024 (b): (1) striking as scandalous or prejudicial, as well as unnecessary, certain allegations set forth in the Second Amended Complaint, dated July 10, 2023; namely, ¶¶ 4, 5 (a) - (c), 5 (c) (iii)-(v), 21, 23-24, 51-53, 55-68, 75-78, 80-82, 83 (g) - (m), 83 (o), 83 (bb), 84, 85 (f), 85 (h), 88-89, 93, 99, 101, and 111; (2) mandating that Plaintiffs James Booth, Michael Gala, Joseph Jardin, Frank Leeb, Michael Massucci, Carla Murphy, and Fred Schaaf (collectively, "Plaintiffs") file a new complaint without scandalous or prejudicial, and unnecessary allegations; and (3) for such other and further relief as this Court deems just and proper. As explained below, the Motion is GRANTED IN PART and DENIED IN PART.
Background
On February 27, 2023, Plaintiffs Michael Gala ("Gala"), Joseph Jardin ("Jardin"), Michael Massucci ("Massucci"), and Fred Schaaf ("Schaaf" and collectively with Gala, Jardin, and Massucci, the "Original Plaintiffs") commenced a hybrid CPLR article 78 proceeding and plenary action under 42 USC § 1983 and the Due Process Clause of the Fourteenth Amendment, against Defendant Kavanagh and the New York City Fire Department ("FDNY") in this Court under Index No. 506192/2023 (the "Prior Action"). Represented by the same counsel which represents Plaintiffs in this action, the four Original Plaintiffs alleged (in ¶ 1 of their Verified Petition) that "[t]his case is about one thing: the safety of the public and valiant firefighters of the [FDNY]." According to the Petition, all four Original Plaintiffs were high-level officials at the FDNY who had been demoted or reassigned. Three Original Plaintiffs Gala, Jardin, and Schaaf, who held the post of Assistant Chief at the FDNY, were demoted two ranks by Defendant Kavanagh on February 3, 2023. In addition, Original Plaintiffs Gala, Jardin, and Schaaf were relieved of their duties as Incident Commanders [FN1]
immediately, with the official demotions (and the associated changes to rank and salary) then scheduled to take effect on [*2]March 4, 2023. Remaining Original Plaintiff Massucci, who was a Deputy Assistant Chief, alleged in the Petition that in November 2022 he was constructively demoted because he had been reassigned from his role as Chief of Uniformed Personnel to a post in the "'Toolroom'. . .with no clear role or responsibilities." In the Prior Action, the Original Plaintiffs contended they were entitled to an Order under CPLR § 7803 (3) compelling their reinstatement to their respective former positions and responsibilities because Defendants Kavanagh's and FDNY's respective decisions were arbitrary, capricious, irrational, an abuse of discretion, and violated the FDNY procedures. In addition, the Original Plaintiffs contended that because Defendants Kavanagh and FDNY made statements about the Original Plaintiffs that allegedly damaged their reputation in connection with the challenged personnel decisions, they were entitled under 42 USC § 1983 and the Due Process Clause of the Fourteenth Amendment to a name-clearing hearing and a declaration that their constitutional rights had been violated.
Concurrently with their commencement of the Prior Action on February 27, 2023, the Original Plaintiffs requested emergency relief in the form of a temporary restraining order ("TRO") that would stop the formal demotions of Original Plaintiffs Gala, Jardin, and Schaaf from going into effect on March 4, 2023, and that would require Defendant Kavanagh to restore them to their previously held duties. On February 28, 2023, the TRO was denied because Defendants Kavanagh and FDNY already removed the Prior Action to the United States District Court for the Eastern District of New York (the "Federal Court"). The Original Plaintiffs then moved for a TRO in Federal Court, while also requesting that after granting the desired preliminary relief, the Federal Court remand the Prior Action to this Court.
By Memorandum and Order dated March 2, 2023, the Federal Court denied the Original Plaintiffs' request for a TRO, finding that they had not made the stringent showing needed to obtain an emergency injunction that would immediately restore them to their former duties and prohibit their demotions. See Gala v Kavanagh, 2023 WL 2356025, *1 (ED NY 2023). By the ensuing Memorandum and Order dated March 3, 2023, the Federal Court denied the Original Plaintiffs' request for leave to reconsider its initial determination, noting that "[a]s a general matter, how the New York City Fire Department. . .should be run is a matter entrusted to elected political leaders and their appointees like the FDNY Commissioner". Gala v Kavanagh, 2023 WL 2349580, *1 (ED NY 2023). Thereafter, by Orders, dated March 13, 2023 as to Original Plaintiff Schaaf and March 24, 2023 as to remaining Original Plaintiffs Gala, Jardin, and Massucci, the Prior Action pending in Federal Court was voluntarily dismissed and terminated.
Instant Action
On March 23, 2023, three of the four Original Plaintiffs Gala, Jardin, and Massucci commenced the instant action for age discrimination, unlawful retaliation, and hostile work environment under the New York State Human Rights Law (Executive Law § 296, et seq.) ("NYSHRL") and the New York City Human Rights Law ("NYCHRL") (Administrative Code of City of New York § 8-107), by filing the Original Complaint dated March 23, 2023. The Original Complaint consisted of 142 paragraphs spanning 53 pages.
On May 5, 2023, three of the four Original Plaintiffs Gala, Jardin, and Massucci were [*3]joined by three additional Plaintiffs James Booth ("Booth"), Frank Leeb ("Leeb"), and Carla Murphy ("Murphy" and, collectively with Booth and Leeb, the "Additional Plaintiffs") in filing their First Amended Complaint dated May 5, 2023 ("FAC"). Asserting the same claims as were lodged in the Original Complaint, the FAC consisted of 164 paragraphs (up from 142 paragraphs of the Original Complaint) spanning 77 pages (up from 53 pages of the Original Complaint).
On July 10, 2023, all four Original Plaintiffs Gala, Jardin, Massucci, and Schaaf, joined by three Additional Plaintiffs Booth, Leeb, and Murphy (collectively, "Plaintiffs"), filed their Second Amended Complaint, dated July 10, 2023 ("SAC"). Asserting the same claims as were lodged in the FAC, the SAC consisted of 166 paragraphs (up from 164 paragraphs in the SAC) spanning 88 pages (up from 77 pages of the FAC).
The essence of the SAC (as was the instance with the Original Complaint and the FAC) is age discrimination, unlawful retaliation, and hostile work environment under the NYSHRL and NYCHRL. The same set of allegations of the SAC — or more, precisely, the same operative paragraph of allegations — underlies each of the First through Sixth Causes of Action for Age Discrimination, Unlawful Retaliation, and Hostile Work Environment in Violation of the NYSHRL and NYCHLR, as set forth in ¶¶ 121, 128, 137, 145, 152, and 161, respectively. The operative paragraph of those allegations in the SAC — regardless of which cause of action it is used to support — reads in full, as follows:
"The conduct of Defendants constituted an unlawful discriminatory practice. Plaintiffs were subjected to inferior terms, conditions, or privileges of their employment due to their membership in a protected class, including but not limited to Defendants: (a) withholding or threatening to withhold benefits from them; (b) undermining their efforts to meet their responsibilities; (c) excluding them from meetings; (d) improperly cutting off their computer access; (e) leaking false information about them to the press; (f) subjecting them to humiliating reassignments; (g) demoting them; and (h) further disparaging them both in the press and during internal FDNY meetings, resulting in emotional distress. Defendants' conduct constituted a serious and pervasive, but at the least, unlawful discriminatory practice that significantly harmed Plaintiffs in the terms, conditions, or privileges of their employment." (SAC, ¶¶ 121, 128, 137, 145, 152, and 161).
Although the SAC is not verified either by any of Plaintiffs or by their counsel, the SAC is supported by the individual affidavits of six of seven Plaintiffs Gala, Jardin, Massucci, Booth, Leeb, and Murphy, as well as by two letters from the FDNY dated April 1, 2019 and October 10, 2019 to nonparty James Leonard.
On July 31, 2023, Defendants timely served the instant motion for an Order, pursuant to CPLR § 3024 (b), to strike certain allegations from the SAC. Plaintiffs opposed. On November 8, 2023, the Court heard oral argument. On November 8 and 13, 2023, the Court received supplemental letter submissions from Plaintiffs and Defendants, respectively.
Standard of Review
CPLR §§ 3013 and 3014 establish the essential pleading requirements. CPLR § 3013 requires that "[s]tatements in a [complaint or other] pleading. . .be sufficiently particular to give the court and parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved and the material elements of each cause of action." CPLR § 3014 adds that "[e]very [complaint or other] pleading shall consist of plain and concise statements in consecutively numbered paragraphs." CPLR § 3026, however, makes sure that form does not prevail over substance, by cautioning that a complaint or any other "[p]leading[ ] shall be liberally construed," and that "[d]efects [therein] shall be ignored if a substantial right of a party is not prejudiced."
As a general matter, in their complaint, Plaintiffs' criticisms of Defendants must be made in good temper and in good taste. To enforce this common-sense principle, CPLR § 3024 (b) permits "[a] party [to] move to strike any scandalous or prejudicial matter unnecessarily inserted in a [complaint or other] pleading," including "written documents annexed to or included within a pleading. . ., or references to such documents [therein]". Pisula v R.C. Archdiocese of NY, 201 AD3d 88, 96 (2d Dept 2021). CPLR § 3024 (b) is "a procedural rule that is not raised with particular frequency. . .[because] [nearly] always, attorneys draft [complaints or other] pleadings with an appropriate level of relevant factual averments and elemental detail, each tailored to the unique procedural needs of the case". Pisula v R.C. Archdiocese of NY, 201 AD3d 88, 97 (2d Dept 2021). CPLR § 3024 (b) "nevertheless serves a worthwhile purpose of assuring that civil pleadings, which [with certain exceptions not relevant here] are public documents, not contain matter that unnecessarily scandalizes or prejudices the adversary party either within the litigation or beyond it". Id. (italics added).
CPLR § 3024 (b) "presents an instance where courts must engage in weighing and evaluating the competing interests of parties, by examining the relevance of allegations in pleadings against any scandalousness or prejudice occasioned by the allegations". Pisula, 201 AD3d at 99. CPLR § 3024 (b) employs "a two-part test" (id.). "The first part is whether the allegation that a party seeks to strike is, in fact, scandalous or prejudicial". Id. (italics added). "If the nature and content of an allegation is not actually scandalous or prejudicial, the court's analysis ends quickly and there is nothing to strike from the pleading" (id.). Stated otherwise, any "matter which is merely unnecessary should not be stricken from a pleading unless it is first shown to be scandalous or prejudicial". Id. (italics added). Thus, "even the most prolix complaint that is chock-full of unnecessary and irrelevant allegations is not subject to any motion to trim the pleading to its necessary core — unless the complaint contains allegations that are scandalous or prejudicial". Id. at 99-100. "Even then, only the scandalous or prejudicial matter is excised, leaving the other irrelevancies intact". Id. at 100 (italics added).
Whether the statement in controversy is "scandalous or prejudicial" depends on a determination of whether the statement, when evaluated in context of the pleading as a whole, "is gratuitous and solely designed to inflame the reader or listener". AJS Agency Inc. v Empire Healthchoice, HMO, Inc., 2011 NY Slip Op 30860(U), *8 (Sup Ct, Nassau County 2011); see also JF v Archdiocese of NY, 78 Misc 3d 1203(A), 2023 NY Slip Op 50147(U), *2 (Sup Ct, Richmond County 2023). Material is considered "scandalous" if it is "reproachful and immaterial" (Hurley v Hurley, 266 App Div 701, 701 [3d Dept 1943]), or "if it is capable of [*4]producing harm to the opposing party without justification" (JF v Archdiocese of NY, 2023 NY Slip Op 50147[U], *3 [internal quotation marks omitted]). Material is considered "prejudicial" when it impairs a substantial right of a party or causes harm to the party and is not necessary to the party's pleading". Dong Wook Park v Michael Parke Dori Group, Inc., 12 Misc 3d 1182(A), 2006 NY Slip Op 51376(U), *5 (Sup Ct, Nassau County 2006).
"When allegations in a pleading are scandalous or prejudicial, the court then reaches the second part of" CPLR § 3024 (b), "which is to determine whether the allegation has been inserted into the pleading 'unnecessarily'". Pisula, 201 AD3d at 100 (italics added). "'Unnecessarily' speaks to the matter's relevance to the action". Id. "Allegations about matters that are irrelevant to the viability of a cause of action. . ., which are also scandalous or prejudicial to the adversary party, may be stricken from the pleading". Id. (italics added).
The Court closes this portion of the Decision and Order with three caveats. First, the nature of Plaintiffs' age-discrimination, retaliation, and hostile work environment claims establishes the relevancy standard. Because the hostile work environment claims are to be decided based on the totality of circumstances, Plaintiffs' allegations relating to Defendants' prior age-discriminatory behavior towards individuals aged 40 or older in the workplace are relevant to this case. See Crawford v American Broadcasting Co., Inc., 216 AD3d 507, 508 (1st Dept 2023); Robinson v Dinneen, 203 AD3d 555, 556 (1st Dept 2022). Second, CPLR § 3024 (b) "motions do not judge whether matters will be discoverable or admissible at trial". Ganieva v Black, 216 AD3d 424, 425 (1st Dept 2023). Accordingly, nothing in this Decision and Order is "intended to influence any rulings that may need to be made by the [motion court] about pretrial discovery or [by the trial court about] the admissibility of any evidence at trial". BCVAWCH-Doe v R.C. Archdiocese of NY, 200 AD3d 744, 747 (2d Dept 2021). Third and finally, "[w]hether to strike allegedly scandalous or prejudicial matter from a pleading in a given instance is left to the discretion of the [motion] court". Pisula, 201 AD3d at 97. Although no appeal lies as of right from an Order granting or denying a motion to strike scandalous or prejudicial matter (see CPLR § 5701 [b] [3]), a party aggrieved by a CPLR § 3024 (b) ruling may seek leave to appeal by an application either to the motion court or directly to the appellate court. See CPLR § 5701 (c).
Discussion
There are qualitative distinctions between the allegations contained in each of the contested paragraphs of the SAC. Each contested paragraph is reviewed separately (albeit tersely) because they collectively raise different factual and legal considerations. The Court's ruling (as underlined and italicized for ready reference) concludes each contested paragraph or paragraphs.
SAC ¶ 4 remains undisturbed: 
"Although six Plaintiffs are white males, Defendants' campaign affected many women and people of color, including Plaintiff Murphy, as well as the highest-ranking Black woman in the Fire Department, who Defendant Kavanagh unceremoniously fired without cause on or about [*5]March 1, 2023, with her duties assumed by a younger replacement" (italics added). This paragraph fails to meet the "scandalous or prejudicial" test of CPLR § 3024 (b). Plaintiff Murphy's alleged status as "the highest-ranking Black Woman in [FDNY]" strengthens (rather than "scandalizes" or "prejudices") the thrust of SAC ¶ 4 that she was allegedly replaced with "a younger" individual, although she (like other Plaintiffs) was "at or near the age of 60" (SAC, ¶ 2). 
SAC ¶ 5 (a) is stricken in its entirety:[FN2]

"Defendant Kavanagh has claimed credit for greater diversity within FDNY because of her role in the 2017 open competitive entrance exam, but, as of December 2021, that test resulted in the hiring of significantly fewer Black candidates than the 2012 test. The difference was more than 20%." This paragraph meets the "scandalous or prejudicial" test, as well as the "unnecessary test," of CPLR § 3024 (b). The 2017 exam, none of which Plaintiffs took, has nothing to do with their claims in this case.[FN3]

SAC ¶ 5 (b) remains undisturbed:
"Since Defendant Kavanagh assumed the duties of First Deputy Commissioner of FDNY [on January 31,] 2018,[[FN4]
] she has orchestrated the demotion, resignation, termination, or forced retirement of more than 10 senior women and people of color, often replacing them with younger, white personnel, and often men" (italics added). As was the instance with SAC ¶ 4, this paragraph fails to meet the "scandalous or prejudicial" test. The allegation that "senior. . . people of color" were replaced with "white personnel, and often men" does not detract from the principal allegation that "senior women and people of color" were replaced with "younger. . .personnel." 
SAC ¶ 5 (c) remains undisturbed: 
"In December of 2018, FDNY decided to create a new and important Deputy Commissioner position, which does not often happen. It was the perfect opportunity to promote a woman or person of color. A qualified woman applied, who was a long-serving Director in the Bureau of Operations and was approximately 58 years old. Defendant Kavanagh passed her over. Instead, she promoted Defendant JonPaul Augier.. . ." (footnote omitted; italics added). This paragraph fails to meet the "scandalous or prejudicial" test. Its implication that a 58-year-old was passed over in promotion in favor of Defendant Augier who presumably was younger, further supports Plaintiffs' claim of age discrimination. 
SAC ¶ 5 (c) (iii), (iv), and (v) are stricken in their entirety: 
According to the SAC, Defendant Augier: "iii. had been disciplined for "conduct [*6]reflecting discredit on the Department"; "iv. had a substantiated Equal Employment Opportunity claim against him while he had been serving Defendant Kavanagh in another role;" and "v. had, while at Engine 35/Ladder 14 in East Harlem, allegedly harassed two Black firefighters, including by hanging a noose in the firehouse, which allegations had been relayed to Defendant Kavanagh by a senior officer" (footnote omitted). Each of the three subparagraphs squarely meets the "scandalous or prejudicial" test, as well as the "unnecessary test," of CPLR § 3024 (b). 
SAC ¶ 21: the below italicized sentence in SAC, ¶ 21 is stricken in its entirety:
"Defendant Philip Banks III is New York City's Deputy Mayor for Public Safety. He previously served as Chief of Department for the New York City Police Department. Although he had agreed to serve as the First Deputy Police Commissioner, he resigned four days after accepting that position, leaving a 28-year career at NYPD, after learning he was the target of a corruption investigation, in which he was alleged to have accepted hundreds of thousands of dollars in exchange for various favors. He is sued here in his official and individual capacities" (footnote and bold-face type omitted; italics added). Plaintiffs concede (in footnote 9, on pages 10-11 of their opposition) that "[t]he SAC. . .includes adverse information about. . .Banks. . .in certain parts of paragraph[ ] 21. . ..We agree to remove [it] from the SAC. . .." 
SAC ¶ 23: the below italicized sentence in SAC, ¶ 23 is stricken in its entirety:
"Defendant Joseph Pfeifer currently serves as the FDNY First Deputy Commissioner. In 2018, he retired from FDNY as an Assistant Chief and worked for McKinsey & Company and Columbia University. In February 2023, Defendant Kavanagh appointed him First Deputy Commissioner, reportedly due to FDNY's loss of experience resulting from Defendant Kavanagh's demotions and constructive demotions of Staff Chiefs. He is apparently the highest-paid 'double dipper' city employee with a combined salary and pension of over half a million dollars. He is sued here in his official and individual capacities" (footnotes and bold-face type omitted; emphasis added). As was the instance with Defendant Banks, Plaintiffs likewise concede (in footnote 9, on pages 10-11 of their opposition) that "[t]he SAC. . .includes adverse information about. . .Pfeifer. . .in certain parts of paragraph[ ] 23. . ..We agree to remove [it] from the SAC. . .." 
SAC ¶ 24: the below referenced italicized sentence in SAC, ¶ 24 is stricken in its entirety:
"Defendant JonPaul Augier currently serves as the FDNY Deputy Commissioner of Infrastructure & Innovation. He obtained his Deputy Commissioner role by leaping nine ranks over a female candidate for the position. He is sued here in his official and individual capacities" (bold-face type omitted; italics added). The italicized sentence of SAC ¶ 24 meets the "scandalous or prejudicial" test, as well as the "unnecessary test," of CPLR § 3024 (b). Further, Plaintiffs have asserted no gender-based discrimination claims in the SAC.
SAC ¶¶ 51-53 are stricken in their entirety: 

"¶ 51. To make matters even more difficult for the Staff Chiefs, including Plaintiffs, they were aware of decisions Defendant Kavanagh made that were either unethical or ill-advised, which sensitized them to the need to make sure she 'understood the rules' and matters of safety, as she often seemed either oblivious of, uninterested in, or disdainful of those rules and safety [*7]issues:" (italics added). SAC ¶ 51 next proceeds with six categories of Kavanagh's allegedly "unethical or ill-advised" decisions: "a. Inaction on Lithium-Ion batteries"; "b. Misleading a Court-Appointed Monitor"; "c. Self-Contained Breathing Apparatus. . .Purchasing Decision"; "d. Making Firefighter Safety a Civilian Task"; "e. Taking Fire-Code Inspection Out of Fire Department Purview"; and "f. Ending Practice of Meeting with Chiefs" (footnotes and bold-face type omitted). Further, SAC, ¶ 52 alleges that "Staff Chiefs and other senior officers and personnel raised concerns about these and other decisions to Defendant Kavanagh, occasionally directly but often through her staff (because she would not meet with them)." Lastly, SAC, ¶ 53 alleges that "[Defendant Kavanagh's] reaction [to the aforementioned concerns] was usually the same: instead of taking the advice of her experienced senior officers, [she] cynically labeled their genuinely held opinions as insubordination and used it as a trope to cancel them" (italics added). The aforementioned paragraphs, in their entirety, are prejudicial to Defendant Kavanagh (as well as Defendant City) in that they paint FDNY (with her at the helm) as grossly mismanaged. Aside from serving as mocking jibes at Defendant Kavanagh, the allegations concerning the nature and quality of her administrative decisions as the FDNY Commissioner are unnecessary and immaterial to Plaintiffs' claims. 
SAC ¶¶ 55-67 and 88 remain undisturbed: 
These paragraphs summarize Kavanagh's allegedly successful campaign — starting in January 31, 2018 and continuing through December 2018 — in ousting then-59-year-old Chief James E. Leonard ("Leonard") from the FDNY. As alleged in the SAC, Defendant Kavanagh's actions against Leonard stemmed from her own devious motives at heart, instead of the good of the FDNY, and forced at least one participant in her schemes — nonparty Deputy Assistant Chief Daniel Donoghue — to retire (SAC ¶¶ 62-63). Although the allegations concerning Defendant Kavanagh's treatment of Leonard are scandalous or prejudicial to Defendant Kavanagh and (where applicable) other Defendants, such allegations (at this early stage of litigation when no depositions and discovery have been conducted) appear to be necessary and relevant to the alleged hostile work environment which Defendant Kavanagh and, where applicable, other Defendants created for (and the ageist attitude which they allegedly displayed toward) Plaintiffs, Leonard (who is not a party to this action), and other age-targeted individuals. These allegations are also necessary and relevant to support the alleged policy employed by Defendant Kavanagh and, where applicable, other Defendants of hiding age-based discrimination behind a series of allegedly contrived investigations of the age-targeted individuals. 
SAC ¶ 68 is stricken in its entirety: 
"Defendant Augier, elated by Chief Leonard's ouster, later told another [unidentified individual], words to the effect of, 'Leonard is gone, Nigro is next.' Augier's statement made its way to Commissioner Nigro, who was furious" (italics added). This paragraph readily meets the "scandalous or prejudicial" test, as well as the "unnecessary test," of CPLR § 3024 (b). 
SAC ¶ 75: the below italicized language is stricken in its entirety:
"Indeed, City Hall's own actions suggest serious concerns over Defendants' misconduct. On February 27, 2023, Plaintiffs Gala, Jardin, and Massucci commenced a hybrid Article 78 proceeding in this Court alleging retaliation against them by Defendant Kavanagh [i.e., the aforementioned prior action]. Only two days later — on March 1, 2023 — legal counsel for the [*8]Mayor reportedly met with City Hall staffers and 'coach[ed]' them on 'how to avoid unwanted public scrutiny of government information.' A recording of the meeting was leaked to a media outlet. According to the article, 'The lawyers also warned of the potential pitfalls of creating a paper trail paved with emails, texts or chats that could later be obtained by news organizations or sucked up as part of law enforcement investigations'" (footnotes omitted; italics added). The italicized language of this paragraph is the exemplar for what CPLR § 3024 (b) was designed to prevent. 
SAC ¶¶ 76-78; 80-82 remain undisturbed: 
These paragraphs summarize Defendant Kavanagh's successful ouster of four senior individuals: (1) 60-year-old Janet Kimmerly, editor of FDNY's official publication, WNYF Magazine, who was "remove[d]. . .from her FDNY roles" in 2020 ("Kimmerly"); (2) 63-year Chief Richard Blatus who was demoted and ultimately forced to retire in March 2023 ("Blatus"); (3) 61-year-old Terryl Brown, FDNY's Chief Legal Counsel, who was "fired without notice and without cause" in March 2023, and was replaced by "a younger lawyer" ("Brown"); and (4) 57-year-old Chief Kevin Brennan whom Kavanagh, by way of changing his responsibilities and his assignment post, "attempt[ed] to constructively discharge. . .or force his retirement" ("Brennan") (SAC ¶¶ 77 [Kimmerly], 78.i and 78.u [Blatus], 80 [Brown], and 81 [Brennan]). As was the instance with Leonard, although Plaintiffs' allegations concerning Defendant Kavanagh's alleged mistreatment of Kimmerly, Blatus, Brown, and Brennan were, in each instance, scandalous or prejudicial, these allegations (individually and collectively) appear to be necessary and relevant to the alleged hostile work environment which Defendant Kavanagh and, where applicable, other Defendants created for (and the ageist attitude which they allegedly displayed toward) Plaintiffs, Leonard, and other age-targeted individuals, including Kimmerly, Blatus, Brown, and Brennan, neither of whom is a party to this action. Further, these allegations as against Blatus are also necessary and relevant to support the alleged policy employed by Kavanagh and (where applicable) other Defendants of hiding age-based discrimination behind a series of allegedly contrived investigations of other age-targeted individuals, including Leonard and Blatus. 
SAC ¶¶ 83 (g)-(h): SAC, ¶ 83 (g) is stricken in its entirety; in addition, the italicized prefatory language in SAC ¶ 83 (h) is also stricken:
"¶ 83 (g). On January 9, 2018, Plaintiff Gala was summoned to a meeting by then Commissioner Nigro. In the presence of three others, Commissioner Nigro accused Plaintiff Gala of spreading a rumor that Defendant Augier was having an extramarital affair with Defendant Kavanagh. This accusation against Plaintiff Gala was completely untrue: he had no reason to believe they had an affair, had never before heard it, and had never made any such suggestion to another. Defendant Kavanagh contrived this story" (italics added). "¶ 83 (h). When this ploy failed, Defendant Kavanagh used a[n unspecified] pretext to convince then Commissioner Nigro to deny Plaintiff Gala a promotion to 3-star Chief, for which he was qualified. Beginning on September 15, 2018, Plaintiff Gala was twice passed over for a promotion to Assistant Chief (third star), once in favor for people with less seniority, and once without anyone being promoted. Both decisions were unusual" (italics added). The entire sub-paragraph ¶ 83 (g), together with the italicized prefatory language in ¶ 84 (h), meet the "scandalous or prejudicial" test, as well as the "unnecessary test," of CPLR § 3024 (b), meriting their striking from the SAC. Plaintiffs' contention (on page 7 of their opposition) that "the point [*9]of Kavanagh's ageist spear — threatening Gala with false allegations of rumor-mongering — [as alleged in SAC, ¶ 83 (g)] is directly relevant to the claims of discrimination, retaliation, and hostile work environment," is unavailing. According to SAC, ¶ 83 (g), it was nonparty Commissioner Nigro (rather than Defendant Kavanagh) who allegedly accused Plaintiff Gala of spreading a vicious rumor about Defendants Kavanagh and Augier. Whether and why "Defendant Kavanagh contrived this story [of the alleged affair]" (as alleged in SAC, ¶ 83 [g]), is not alleged in the SAC. The plain import of SAC ¶ 83 (g) is that Plaintiff Gala allegedly sought to maliciously undermine Commissioner Nigro's faith in Defendants Kavanagh and Augier by holding both of them up to contempt and ridicule. 
SAC, ¶¶ 83 (i), (j), and (k) remain undisturbed: 
These paragraphs allege that Plaintiff Gala was bypassed for promotion to Assistant Chief on multiple occasions. There is nothing scandalous or prejudicial in any of those subparagraphs.
SAC, ¶¶ 83 (l), (m), and (o) are stricken in their entirety: 
"¶ 83 (l). Plaintiff Gala subsequently learned that the decision to deny his promotion was retaliation for protected First Amendment speech he had uttered years before. When Defendant Kavanagh used this as a pretext to advocate for the denial of his promotion, Plaintiff Gala brought suit. On the eve of depositions in the case, including those of Commissioner Nigro and Defendant Kavanagh, the City agreed to settle the case." "¶ 83 (m). On June 17, 2021, Plaintiff Gala and the City entered into a settlement agreement under which the City agreed to promote Plaintiff Gala to Assistant Chief, effective retroactively to May 23, 2020." "¶ 83 (o). In the Fall of 2022, shortly after being sworn in as Fire Commissioner, Defendant Kavanagh approached Terryl Brown, then FDNY's Chief Legal Counsel and Deputy Commissioner for Legal Affairs, and inquired about the terms of Plaintiff Gala's settlement agreement with the City." As a general rule, settlements and offers to settle are inadmissible at trial (see CPLR § 4547). "Thus, the allegations related to such are irrelevant and should be struck" (Soumayah v Minnelli, 41 AD3d 390, 393 [1st Dept 2007], appeal withdrawn 9 NY3d 989 [2007]). 
SAC ¶ 83 (bb) is stricken in its entirety:
This subparagraph alleges that Defendants retaliated against Plaintiff Gala's son, Robert, a former Emergency Medical Technician with the FDNY, by publishing (or re-publishing) negative articles about Robert on: (1) "the FDNY's intranet's daily news feed"; (2) "EMS1, an online resource for emergency medical services employees"; and (3) "the FDNY daily media digest." This subparagraph gratuitously asserts wrongs that have nothing to do with the parties or claims to this action. 
SAC ¶ 84 is stricken in its entirety: 
"Arlene Hoffman: In or about December 2018, Defendant Kavanagh passed Director of Bureau of Operations Arlene Hoffman, who was approximately age 62 at the time, over for a promotion, for which she was qualified, in favor of a less experienced, younger, male candidate, Defendant Augier. Defendant Kavanagh then forced Director Hoffman to resign. After Director Hoffman threatened to sue, FDNY settled the matter out of court" (bold-face type omitted). As was the instance with Plaintiff Gala's previously settled action against the City, the allegations of [*10]the FDNY's settlement of Arlene Hoffman's claims against it (as well as the circumstances surrounding such settlement) are inadmissible under CPLR § 4547 and should be excised from the SAC. 
SAC ¶ 85 (f) remains undisturbed: 
"First, Defendant Kavanagh interfered with Plaintiff Jardin's execution of his professional responsibilities, to the detriment of others. In the fall of 2017, Defendant Kavanagh quashed Plaintiff Jardin's plan — approved by Commissioner Nigro — to add an additional 'Rehabilitation and Care' vehicle to treat firefighters for exposure at the scene of a fire. Assistant Fire Commissioner of the Fleet Services Bureau Mark Aronberg even offered Jardin a suitable vehicle, but then rescinded the offer, telling Jardin that Defendant Kavanagh, through intermediaries, had interceded." None of the allegations in the foregoing paragraph are scandalous or prejudicial to Defendants. 
SAC ¶ 85 (h) (i) — (xii) are stricken in their entirety: 
"It was in Plaintiff Jardin's role as Chief of BFP [Bureau of Fire Prevention] that he encountered corruption [at the FDNY] in favor of major real estate developers, and his refusal to acquiesce to it led to retaliation by the Defendants" (italics added). SAC ¶ 85 (h) includes 12 sub-subparagraphs (numbered [i.] to [xii.]) elaborating on the alleged corruption. Without going into details of SAC ¶ 85 (h), it broadly alleges, in substance, that the FDNY, with the assistance of the "Deputy Mayor of Operations," "fast-track[ed] [the FDNY inspections] for [influential] 'friends' of City Hall" (SAC, ¶ 85 [h] [vii]). SAC ¶ 85 (h) (with the exception of sub-subparagraph [xiii][FN5]
) meets the "scandalous or prejudicial" test, as well as the "unnecessary test," of CPLR § 3024 (b). Accord Davis v Richmond Capital Group, LLC, 194 AD3d 516, 518 (1st Dept 2021). 
SAC ¶ 89 remains undisturbed: 

"Jose Maldonado: In 2016, Mr. Maldonado, age 68, was asked to leave FDNY after serving as Counsel to the Commissioner, all because he complained that FDNY was not promoting enough Hispanic and Asian personnel. Defendant Kavanagh was responsible for his termination" (bold-face type omitted). Because this paragraph fails to meet the "scandalous or prejudicial" test, its apparent irrelevancy to this action does not require its excision. 
SAC ¶ 93 remains undisturbed: 
 
"Chief Thomas Richardson: In December 2022, Defendant Kavanagh forced Chief Richardson, age 63, off medical leave (contrary to his doctor's medical advice). Defendant Kavanagh also refused to approve his request to bank his 2022 vacation time, all in an effort to force him to retire" (bold-face type omitted). As was the instance with nonparties Leonard, Kimmerly, Blatus, Brown, and Brennan above, the allegations concerning Chief Richardson [*11](who likewise is not a party to this action) are neither scandalous or prejudicial, nor are they unnecessary. 
SAC ¶¶ 99 and 101 are stricken in their entirety: 
"¶ 99. The [Maureen] Dowd column [in the New York Times] had a predictable effect. On April 10, 2023, FDNY Deputy Assistant Chief Thomas Currao had a fiery exchange with Defendant Pfeifer on the 8th Floor of FDNY's headquarters. Several people heard the exchange. Currao demanded to see the list of those Chiefs who could 'easily replace' the Staff Chiefs. Pfeifer had no such list. Chief Currao — who has been described as a Kavanagh ally and someone she promoted — demanded a demotion in writing. Chief Currao was the tenth Staff Chief to request a demotion" (footnote omitted). "¶ 101. On April 20, 2023, First Deputy Commissioner Pfeifer attended a series of meetings with the Staff Chiefs which, in total, lasted almost 3 hours. At the meetings, after securing everyone's promise to consider the meetings as secret, he claimed that the [New York] Times's Maureen Dowd was at fault for misquoting him and taking his words out of context. He explained that — although Dowd intimated that he had accused the Staff Chiefs of sexism — his comment was directed at the entire FDNY. When one Chief complained that Defendant Augier remained as a Deputy Commissioner despite his alleged history of abusing Black firefighters, Defendant Pfeifer said words to the effect of: 'I have known JP for many years, he has reformed'" (footnotes omitted; italics added). These allegations come across as prejudicial and unnecessary side-stories, gossip and innuendo, with no place in the SAC. 
SAC, ¶ 111 remains undisturbed:
"Deputy Chiefs in line for promotions know this. In April 2023, FDNY conducted an informal survey of 65 Deputy Chiefs to determine whether they would accept promotions to Staff Chief — a highly prestigious position with attendant increases in salary and benefits. Every single Deputy Chief responded that they would reject any such promotion. Six responded that they would consider accepting a promotion, but only after another year passes" (footnote and bold-face type omitted). Not scandalous or prejudicial.
Conclusion
Upon the filing and reading of the Second Amended Complaint, the pre-answer Motion to Strike, and the parties' respective submissions in support and opposition thereto, and upon the oral argument held on November 8, 2023, the Court grants the motion in part and denies it in part, as more fully set forth above.
Plaintiffs shall e-file and serve their Third Amended Complaint ("TAC") within 20 days after service of this Decision and Order with notice of entry by Defendants' counsel on Plaintiffs' counsel, 
subject to the satisfaction of the following conditions precedent:
(1) the TAC shall incorporate and reflect all the rulings set forth in this Decision and Order;
(2) the TAC shall omit all the footnotes which are referencing news stories in the SAC; namely footnotes 1, 3-19, 22, 26-28, 31-32, 34, 37, 39-41, 44-45, 47-54 of the SAC;
(3) the TAC shall omit all of Plaintiffs' affidavits and other attachments to the SAC;
(4) in lieu of Plaintiffs' affidavits and other attachments, the TAC shall be personally verified by each Plaintiff as to the matters within the scope of such Plaintiff's personal knowledge;
(5) a blackline of the TAC as the "new document" compared against the SAC as the "old document" (using a Workshare DeltaView or other reputable software program) — with all deletions indicated by a strike-through and with all additions indicated by a double-underline — shall be concurrently e-filed and served with the TAC; and
(6) because the caption of this action, since its inception, has been Gala, et al. v City of New York, et al., whereas the SAC names James Booth (rather than Michael Gala) as the lead Plaintiff, the caption to be set forth in the TAC shall revert to Michael Gala as the lead Plaintiff, with James Booth moving to the second position in the caption.
This constitutes the Decision and Order of the court.
Date: December 21, 2023
Brooklyn, New York
Hon. Patria Frias-Colón, J.S.C.

Footnotes

Footnote 1: "Incident Commander" is the FDNY's term for "commanding officers" in charge of "any fire that requires three alarms or more".

Footnote 2: For ease of reference, the Court uses parentheses (instead of the periods as Plaintiffs do) to denote the subparagraphs of the SAC. 

Footnote 3: As one trial court colorfully remarked on the issue of relevancy in another context, "What does that have to do with the price of eggs?" See Clark v Clark, 2005 WL 2230198, *3 n 5 (Tenn Ct App 2005).

Footnote 4: The exact date of Kavanagh's appointment as FDNY's First Deputy Commissioner is alleged in ¶ 59 of the SAC (footnote by the Court).

Footnote 5: Sub-subparagraph (xiii) of ¶ 85 (h) alleges that "[o]n July 18, 2022, Plaintiff Jardin was called to a meeting with the Chief of Department and Chief of Fire Operations. Jardin was informed that he was being reassigned to a role within the Bureau of Operations. Defendants Banks and Kavanagh coordinated on this retaliatory action."